[No. 16617-8-II.    Division Two.    July 10, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. JEREMY L. CLEMENS, *Respondent*.

*David George Skeen, Prosecuting Attorney*, for appellant.
*Craddock David Verser, Public Defender*, for respondent.

HOUGHTON, J. — Jeremy L. Clemens entered a *Newton/ Alford*[1] plea to a charge of rape of a child in the third degree. Exercising its discretion, the trial court imposed an exceptional sentence downward. The State appeals. We affirm.

## FACTS

On June 24, 1991, an employee of Child Protective Services contacted the Port Townsend Police. She informed the police that one of her clients, TH, born May 11, 1977, reported having sexual intercourse with Jeremy Clemens, born December 26, 1972.

On August 9, 1991, Deputy Randall Kelley of the Jefferson County Sheriff's Office interviewed TH. TH told Kelley that in April 1991,[2] she spent the night with Clemens' sister, "Shelley"[3] Talley. TH, Talley, and Clemens played video games until Clemens said he was tired and went to bed.

After Clemens was in bed, Talley and TH entered his bedroom. After they talked for a few minutes, Talley left the room, but TH remained. TH and Clemens kissed and, shortly thereafter, engaged in sexual intercourse. TH later

_____

[1] In *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), the Supreme Court held that a defendant may enter a plea of guilty, waiving his constitutional right to a trial, even though the defendant would not admit to having committed the charged crime. This is known as an *Alford* plea. The Washington Supreme Court adopted this rationale in *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[2] TH was 13 years old at the time of the sexual contact, and Clemens was originally charged with rape of a child in the second degree. However, pursuant to a plea agreement, an amended information was filed, charging Clemens with rape of a child in the third degree.

[3] Clemens refers to the person with whom he was visiting as Shelley and Michelle at different points in the record; we assume from the circumstances these both refer to the same person.

told Deputy Kelley that the sexual intercourse was consensual and that Clemens knew her age.

Clemens was charged with rape of a child in the third degree and entered his *Alford* plea on March 19, 1992. Sentencing was delayed until October 30, 1992, and Clemens was released subject to certain conditions. At the sentencing hearing, Clemens told the trial court that he had abided by the conditions of his release, obtained full-time employment, and remained free from the influence of drugs and alcohol. Further, he informed the trial court that he planned to get married, that his fiance was pregnant, and that he intended to support his new family.

A presentence investigation report was also submitted to the trial court prior to sentencing. The report states that Clemens indicated he had kissed TH a couple of days prior to the incident. Clemens also underwent a psychosexual evaluation, which was incorporated in the presentence investigation report. According to that evaluation, Clemens was neither a sexual predator, nor a danger to the community.

At the sentencing hearing, the trial court entered the following findings of fact:

(1) The defendant and the victim engaged in sexual intercourse on June 24, 1991[.][4]

(2) At the time of the intercourse the victim was 14 years old, and the defendant was 18 years old, but was more than 48 months older than the victim.[5]

(3) The victim entered a bedroom occupied by the defendant after the defendant had gone to bed. The victim willingly engaged in sexual intercourse with the defendant, in his bed.

(4) The victim has not experienced trauma as a result of the incident nor has the victim needed counseling.

---

[4]Although the incident was reported on June 24, 1991, the record suggests that finding of fact 1 is incorrect. However, the date the incident occurred is not essential to the trial court's conclusion of law 1. See also n. 2, *supra*.

[5]See n.2, *supra*.

The trial court also entered the following conclusion of law:

(1) To a significant degree the victim was an initiator and willing participant in the incident.

The standard range sentence for Clemens' crime was confinement for 15 to 20 months. The trial court imposed an exceptional sentence downward of 12 months in the county jail, three months less than the low end of the standard range. In imposing the sentence, the trial court stated:

The basis for the extraordinary sentence is simply that this was not Mr. Clemens going to the young girl's bedroom and then engaging in sexual intercourse. It was a situation where he had gone to bed; she came to his bedroom; sexual intercourse occurred; she was a willing participant and possibly even the one initiating the contact, and there was no harmful or ill effect on the victim herself.

The State appeals the exceptional sentence downward, arguing that the trial court's findings are not supported by the record and that its decision is incorrect as a matter of law, or clearly too lenient.

## ANALYSIS

■■ Our review of a sentence that is outside the standard range is controlled by RCW 9.94A.210(4), pursuant to which:

An appellate court analyzes the appropriateness of an exceptional sentence by determining (1) whether the reasons given for it are supported by the evidence in the record under a "clearly erroneous" standard of review; (2) whether the reasons given for the exceptional sentence justify departure from the standard range as a "matter of law"; and (3) whether the exceptional sentence is clearly . . . too lenient under an "abuse of discretion" standard of review.

*State v. Johnson*, 124 Wn.2d 57, 65-66, 873 P.2d 514 (1994) (citing RCW 9.94A.210(4)); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991); *State v. Holt*, 63 Wn. App. 226,

228-29, 817 P.2d 425 (1991). The analysis under the second prong requires a finding that the court's reasons are "substantial and compelling" as a matter of law. *State v. Moore*, 73 Wn. App. 789, 795, 871 P.2d 642 (1994) (citing RCW 9.94A.120(2)). This in turn requires a determination whether the Legislature necessarily considered the mitigating factor in setting the standard range sentence, and whether such factor sufficiently distinguishes the instant crime from other such crimes. *State v. Alexander*, 125 Wn.2d 717, 725, 888 P.2d 1169 (1995).

██ Thus, we must first decide if the sentencing court's reasons for imposing an exceptional sentence are supported by the record. *See State v. Smith*, 123 Wn.2d 51, 55, 864 P.2d 1371 (1993); *State v. Chadderton*, 119 Wn.2d 390, 399, 832 P.2d 481 (1992); *State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). We are required to uphold such factual determinations by the sentencing court if they are not clearly erroneous, a standard which protects the trial court's discretion to make factual findings in light of its view of the parties and witnesses. *Smith*, at 55.

The State asserts that although the record shows TH entered Clemens' bedroom, that evidence does not support the conclusion that she initiated the sexual contact. The State misconstrues the trial court's conclusion, however, which finds that "the victim was an initiator *and willing participant* in the incident". (Italics ours.) Further, finding of fact 3 states "[t]he victim willingly engaged in sexual intercourse . . .".

Our review of the record reveals the following.[6] The presentence investigation report given to the court at the time of sentencing discloses that TH "readily admitted to having willful sexual intercourse with Jeremy Clemens in April of 1991". This report further states that neither TH

---

[6]Arguably, the State has failed to assign error to the trial court's factual findings, so we should accept them as verities. *See Alexander*, 125 Wn.2d at 723. Nonetheless, because the challenged findings are made clear by the briefing, we will exercise our discretion to review them under the "clearly erroneous" standard.

nor her mother responded to Detective Kelley's request for further information. The report also sets forth the following statement made by Clemens:

> About 10:00 or 11:00 o'clock at night I decided to go to bed in Michelle[']s room. After I went in there and layed [sic] down, Michelle and [TH] came in to say good night or something. They both sat down on the bed. [A]fter a couple of minutes of talk, Michelle got up and went back into the living room.[ ] [TH] stayed and we talked for awhile. She bent down and kissed me. One thing led to another and we had sex. Afterwards she got up, put her clothes on and gave me another kiss and left the room. I went to sleep.

In addition, while undergoing a psycho-sexual evaluation, Clemens told the investigator, "[TH] kissed me goodnight, and ended up crawling in bed with me". Further, there is no evidence in the record to contradict TH and Clemens' statements to the effect that TH was a willing participant. In view of this supporting evidence, we cannot conclude the trial court's factual findings were clearly erroneous. *See Allert*, 117 Wn.2d at 166.

Applying the second step mandated by RCW 9.94A.210(4), the State contends the trial court's reason for imposing an exceptional sentence is inadequate as a matter of law. It asserts that the Legislature did not intend for consent to be a mitigating factor in the crime of third-degree rape of a child. This argument, however, misconstrues the trial court's reasoning. The trial court did not conclude that TH's consent justified an exceptional sentence. Rather, because the evidence indicated TH was a willing participant in the consensual act, because no evidence indicated Clemens himself initiated the sexual contact, and because no evidence indicated harm to TH, the trial court entered an exceptional sentence downward.

█ The Legislature has determined that *willing participation* by a victim of a crime is a valid mitigating circumstance for consideration under the sentencing statute, RCW 9.94A.390(1):

> The following are illustrative factors which the court may

consider in the exercise of its discretion to impose an exceptional sentence. . . .

(1) Mitigating Circumstances

(a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.

In light of this legislative determination, *and* because the evidence tends to show that Clemens did not take any steps to initiate the sexual contact, we find the trial court's reason substantial and compelling as a matter of law.[7] *See State v. Nelson*, 108 Wn.2d 491, 498-99, 740 P.2d 835 (1987) (exceptional sentence downward justified as a matter of law due to presence of mitigating factor listed in former RCW 9.94A.390).

Moreover, the issues before this court are (1) whether Clemens' initially passive role in the events, and TH's willing participation, significantly distinguish Clemens' crime of third-degree rape of a child from other instances of third-degree rape of a child; and (2) whether this factor was necessarily considered by the Legislature in establishing the standard range. *See Alexander*, 125 Wn.2d at 725-

---

[7] Evidence of willing participation by the victim, standing alone, may not be sufficient to justify an exceptional sentence downward in similar cases, absent affirmative evidence the defendant did not plan or initiate the encounter. We are aware that in some cases involving the rape of a child, the child has been manipulated (or "groomed") by the defendant into initiating or participating in sexual contact. In such cases, an older defendant takes advantage of the youth and immaturity of the victim to create a circumstance in which the victim approaches the defendant for a sexual relationship. Such conduct may be an aggravating, rather than mitigating, factor. *See* RCW 9.94A.390(2)(b) (vulnerability due to extreme youth); (c)(iii) (high degree of planning); (c)(iv) (use of position of trust or confidence); and (e) ("ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period").

Although we are aware of this potential, no evidence exists in the present case suggesting such manipulation occurred surrounding this single instance of sexual contact. Nor does the evidence suggest Clemens himself initiated or planned the contact. Furthermore, TH and Clemens were relatively close in age and maturity, suggesting TH was not so susceptible to manipulation as when the age difference is greater, or when the victim is so young and immature as to be unaware of the consequences of the victim's actions. Our determination upholding the trial court's discretion to impose an exceptional sentence *following* trial should not, of course, be read to affect substantive evidentiary issues during the trial of such cases.

26. Although we are mindful of the State's argument that the victim often is a "willing participant" in such situations, or more precisely, may be unwilling to object to the advances of an adult, the present case is nonetheless distinguishable from and less egregious than the facts found in similar crimes.

Here, both the perpetrator and victim were close in age and maturity, and there is no evidence that Clemens had planned the sexual contact. Although Clemens admitted having kissed TH several days before the incident, on the night in question Clemens had gone to bed alone, without initiating any contact with TH; had she not entered the room where he intended to sleep and initiated contact by kissing him, this incident would not have occurred. The State produced no evidence to contradict this conclusion.

Other Washington case law also comports with our holding. Although not directly on point, *State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987), addressed the application of RCW 9.94A.390(1)(a) to an exceptional sentence downward upon a conviction of manslaughter. The defendant claimed that the stabbing had been in self-defense and that she was a battered woman. The Supreme Court, in upholding the exceptional sentence downward, stated:

> Here, the defendant at trial claimed that she killed Kieffer in self-defense and that she suffered from battered woman syndrome. Although this defense failed and she was convicted of manslaughter, the trial judge in performing his sentencing function could evaluate the evidence of these mitigating factors and find that her actions significantly distinguished her conduct from that normally present in manslaughter. The trial court properly considered these factors.

*Pascal*, at 137. We recently reached a similar conclusion in *Moore*, 73 Wn. App. at 789 (accomplice's minimal involvement in crime justified exceptional sentence downward), as did the Supreme Court in *Alexander*, 125 Wn.2d at 727 (extremely small amount of cocaine and lack of sophistication are mitigating factors in sentencing for unlawful possession).

Here, neither willing participation, initiation by the victim, nor the defendant's lack of initiation are defenses to the crime of third-degree rape of a child. Although we are not dealing with a failed defense here, these factors nevertheless significantly distinguish Clemens' crime from other incidents of third-degree rape of a child. Moreover, the exclusion of such defenses indicates the Legislature did not necessarily consider willing participation or lack of initiation in setting the standard range, nor are such factors elements of the crime or considered in computing the standard sentencing range under RCW 9.94A.370(1). *See Alexander*, 125 Wn.2d at 729. Thus, there are substantial and compelling reasons for the trial court's three-month downward departure from the standard range.

■ The State notes, however, that statutory rape is a strict liability offense. *State v. Knutson*, 121 Wn.2d 766, 775, 854 P.2d 617 (1993) (absence of consent is not an element of third-degree rape of a child, RCW 9A.44.079); *State v. Saiz*, 63 Wn. App 1, 4, 816 P.2d 92 (1991). The inherent purpose of this crime is to protect persons too immature to rationally or legally consent. *State v. Dodd*, 53 Wn. App. 178, 181, 765 P.2d 1337 (1989). The State therefore asserts that because persons under the statutory age are legally incapable of giving consent, such persons are also legally incapable of being willing participants in the act.

■ Although the State may be correct in asserting that the Legislature did not provide a victim's consent as a valid defense for purposes of statutory rape prosecutions, it did provide a victim's willing participation as a valid mitigating factor for purposes of sentencing. RCW 9.94A.390(1). Furthermore, RCW 9A.44 (which categorizes and defines sex offenses, their defenses and sentencing) does not preclude application of RCW 9A.94.390(1) in cases involving third-degree rape of a child. Thus, the Legisla-

ture is aware of its ability to preclude such an application of mitigating factors, but has not done so.[8]

■ Ultimately, the State's argument is misplaced, because the willing participation of the victim merely provides some evidence regarding the culpability of the defendant for sentencing purposes; it does not excuse the acts of the defendant. The trial court's conclusion that TH was a willing participant in the sexual contact did not affect Clemens' conviction.

Nor do we find "clearly too lenient" the trial court's reduction of Clemens' sentence from a standard range minimum of 15 months to an exceptional downward sentence of 12 months under the facts of this case. Clemens complied with the requirements placed on him by the trial court prior to sentencing, and showed every indication of being on a path to rehabilitation. The trial court did not abuse its discretion. *Cf. Moore*, 73 Wn. App. at 800 (27 months downward not clearly too lenient).

Ultimately, the State would have this court ignore the Legislature's intent to maintain the sentencing court's discretion when mitigating circumstances exist at sentencing. We decline to do so. The Sentencing Reform Act of 1981 provides:

> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, *but does not eliminate*, discretionary decisions affecting sentences . . . .

(Italics ours.) RCW 9.94A.010.

This is particularly true when the Legislature expressly enumerates as a mitigating factor the very reason upon which the trial court rests its decision. The trial court's

---

[8]This analysis comports with the reasoning of *State v. Freitag*, 127 Wn.2d 141, 896 P.2d 1254 (1995), decided after briefing and argument in the present case. Although that decision reverses an exceptional sentence downward, it does so because "it is the function of the judiciary to impose sentences consistent with legislative enactments" and because the trial court failed to rely upon a statutory mitigating factor. *Freitag*, at 144-45. Here, we uphold a sentence consistent with RCW 9.94A.390(1)(a).

findings were not clearly erroneous, its application of the statutory mitigating factor was substantial and compelling as a matter of law, and its three-month reduction of the standard range sentence was not unreasonable.

Affirmed.

MORGAN, J., concurs.

SEINFELD, J. (dissenting) — Although I am sympathetic to the majority's concern for sentencing court discretion, I believe that a child's so-called "willing participation" in an act of sexual intercourse should not, as a matter of law, be used to justify a sentence below the standard range. The use of this factor is inconsistent with legislative intent. Further, our approval of this factor may lead to serious mischief; convicted offenders may now place their child victim on trial in an effort to prove facts that might justify an exceptional sentence downward.

The rationale supporting the criminalization of sexual intercourse with a child is that the child is too immature to rationally and legally consent to the act. *See State v. Abbott*, 45 Wn. App. 330, 332-34, 726 P.2d 988 (1986), *review denied*, 107 Wn.2d 1027 (1987). Thus, the consent of the victim, as the majority acknowledges, is not a defense. *See* RCW 9A.44.079; *State v. Knutson*, 121 Wn.2d at 775, 854 P.2d 617 (1993). Nonetheless, the majority, relying heavily on RCW 9.94A.390, concludes that the victim's willing participation is an appropriate sentencing factor.

The majority's holding requires an assumption that a child victim, although legally incapable of agreeing to participate, is nonetheless capable of being a willing participant. I believe this assumption is flawed. A person who cannot consent cannot act willingly. *Random House Dictionary of the English Language* 2175 (2d ed. 1987). Thus, when the legislature used the term "willing participant" in RCW 9.94A.390, it did not intend to include victims incapable of legal consent.

A view of the total scheme of the child rape statute at

hand, RCW 9A.44.079, further supports this conclusion that a child cannot be a willing participant. The statute, in addition to focusing on the immaturity of the child, also looks at the age of the perpetrator. He or she must be at least 4 years older than the victim, who in the case of rape in the third degree, must be at least 14 years old. Thus, the defendant must be an adult. The statute contemplates a substantial disparity between the age and maturity of the victim and of the perpetrator, and in light of this disparity, requires the adult to exercise restraint and not take advantage of a child, even one who appears to be a willing participant. The crime is failing to exercise this restraint.

The majority acknowledges that in some cases the perpetrator has groomed the victim. The courts also see many other cases where the victim is particularly precocious because of past sexual abuse. The majority ruling suggests that when a defendant claims that he is less culpable because of the victim's willing participation, the State or the victim bear the burden of showing that such is not the case. The practical consequences of requiring such a showing include further invasions of the privacy of those victims most in need of the law's protection.

Finally, I am concerned about the majority's description of the facts of this case. Clemens' conviction arose from a *Newton/Alford* guilty plea.[9] Thus, the sentencing court did not hear evidence at trial or even have a defendant's description of the act as part of his guilty plea. It had only the presentence investigation report and the psycho-sexual evaluation. From this limited record, the majority states that there is no evidence suggesting that Clemens manipulated the victim.

But the record does contain claims, admittedly unsubstantiated, that Clemens may have been involved in other incidents with other victims and in an earlier incident with this victim. The author of the presentence report

[9]*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

expressed his belief that this matter "was not just an isolated/spontaneous incident". Although we must view these reports cautiously, they do contrast with the majority's characterization of the record. They show the meager and contradictory support for the sentencing court's conclusion that Clemens is less culpable than other offenders because TH was a "willing participant".

The above discussion does not preclude reliance on factors that look to the defendant's culpability rather than the victim's behavior. Evidence of the lack of a predisposition to commit the crime or that the crime was committed under threat, coercion, duress, or compulsion might provide substantial and compelling reasons to support a downward departure. RCW 9.94A.390(1)(c) and (1)(d). However, the trial court made no findings or conclusions to this effect. Instead, it focused totally on the victim. Thus, I would reverse.

