173 P.3d 983 (2007)
STATE of Washington, Appellant,
v.
Raymond Carl HUGHES, Respondent and Cross-Appellant.
No. 23946-2-III.
Court of Appeals of Washington, Division 3.
December 20, 2007.
*984 Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Appellant.
David N. Gasch, Gasch Law Office, Spokane, WA, for Respondent and Cross-Appellant.

PUBLISHED OPINION
BROWN, J.
¶ 1 Raymond Carl Hughes pleaded guilty to two sex crimes following one act of sexual intercourse with a 12-year-old girl, S.E.H., who was disabled and incapable of giving consent  rape of a child in the second degree, RCW 9A.44.076(1); and, second degree *985 rape, RCW 9A.44.050(1)(b). The admissions exposed Mr. Hughes to the terms under former RCW 9.94A.712 (2001) that required the sentencing court to order a maximum life sentence and set a minimum term. We delayed decision of the State's appeal of the trial court's decision that it lacked power or authority to set an exceptional minimum sentence under former RCW 9.94A.712 until the mandate issued in State v. Clarke, 156 Wash.2d 880, 134 P.3d 188 (2006). The Clarke court held that Blakely[1] exceptional sentencing limitations do not apply to indeterminate minimum sentences under former RCW 9.94A.712. First, following Clarke, we grant the State's appeal. Second, we reject Mr. Hughes' double jeopardy contentions because we conclude the legislature intended to impose multiple punishments for the single act of sexual intercourse. Accordingly, we affirm Mr. Hughes' convictions and remand for further proceedings.

FACTS
¶ 2 Mr. Hughes engaged in a single act of sexual intercourse with S.E.H., a 12-year-old girl incapable of consent by reason of being physically helpless or mentally incapacitated due to cerebral palsy. He was charged with and pleaded guilty to one count of second degree child rape and one count of second degree rape. Mr. Hughes unsuccessfully moved to dismiss one conviction on double jeopardy grounds. The court declined to consider an exceptional minimum sentence under former RCW 9.94A.712 (2001) because it believed it lacked "power or authority" to grant an exceptional sentence under Blakely. Report of Proceedings at 41. The court ordered a top-end minimum sentence of 102 months. The State appealed. Mr. Hughes cross-appealed.

ANALYSIS

A. Exceptional Sentence
¶ 3 The issue is whether the trial court erred in rejecting the State's request to consider an exceptional minimum sentence under former RCW 9.94A.712. The State contends the trial court erred in applying Blakely and Apprendi[2] to an indeterminate sentencing. The State is correct.
¶ 4 We review statutory and constitutional issues de novo. Clarke, 156 Wash.2d at 887, 134 P.3d 188. Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. The Blakely Court clarified that the "statutory maximum" for Apprendi purposes "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531. The court in Clarke then held that Blakely does not apply to indeterminate minimum sentences under former RCW 9.94A.712 that do not exceed the maximum sentence imposed.
¶ 5 Here, without the benefit of Clarke, the trial court considered the sentencing scheme for nonpersistent offenders in former RCW 9.94A.712. The court was required to set a maximum term (the statutory maximum term for the offense) and a minimum term, either within or outside the standard range. RCW 9.94A.712(3). Believing it lacked the discretion to order an exceptional sentence under Blakely, the trial court denied the State's request for an exceptional minimum term sentence. Clarke resolved this issue for the State; the court should have considered the State's exceptional sentencing request. A trial court may impose an exceptional minimum sentence under an indeterminate sentencing scheme when the exceptional sentence does not exceed the maximum sentence imposed. Clarke, 156 Wash.2d at 893-94, 134 P.3d 188.

B. Double Jeopardy
¶ 6 The issue is whether the trial court erred in rejecting Mr. Hughes' motion to dismiss one conviction under double jeopardy principles. Mr. Hughes contends one conviction *986 should result from one act of sexual intercourse.
¶ 7 Double jeopardy claims are questions of law that we review de novo. State v. Freeman, 153 Wash.2d 765, 770-71, 108 P.3d 753 (2005).
¶ 8 The double jeopardy protections found in the United States Constitution and the Washington Constitution are coextensive. U.S. CONST. amend. V.; WASH. CONST. art. I, § 9; State v. Gocken, 127 Wash.2d 95, 100, 896 P.2d 1267 (1995). A defendant is protected against multiple punishments for the same offense, regardless of whether the sentences are imposed concurrently. Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); State v. Johnson, 92 Wash.2d 671, 600 P.2d 1249 (1979). However, multiple punishments are permissible if the legislature so intended. State v. Baldwin, 150 Wash.2d 448, 454, 78 P.3d 1005 (2003) (citing State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995)); Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).
¶ 9 The analytic framework for determining legislative intent for a double jeopardy claim differs somewhat from ordinary statutory interpretation. In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004). A clear indication of legislative intent on the face of the statute or in the legislative history that the charged crimes constitute the same offense is, of course, dispositive. State v. Jackman, 156 Wash.2d 736, 746, 132 P.3d 136 (2006); Calle, 125 Wash.2d at 776-77, 888 P.2d 155. Absent that indication, Washington courts rely on the presumptive test for legislative intent articulated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Jackman, 156 Wash.2d at 746, 132 P.3d 136 (citing Calle, 125 Wash.2d at 778, 888 P.2d 155). In Washington, "[u]nder the same evidence rule, if each offense contains elements not contained in the other offense, the offenses are different and multiple convictions can stand." Id. (citing Baldwin, 150 Wash.2d at 454, 78 P.3d 1005). This requires a determination of "whether each provision requires proof of a fact which the other does not." Id. (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. 180).
¶ 10 An individual is guilty of second degree rape of a child "when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). An individual is guilty of second degree rape when "the person engages in sexual intercourse with another person" "[w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). The two statutes do not specify multiple punishments for the same act of intercourse. See RCW 9A.44.076; RCW 9A.44.050.
¶ 11 However, the two offenses are found in separate code sections and the punishments differ. Under RCW 9A.44.076(1), second degree child rape requires proof that S.E.H. was a certain tender age and Raymond Carl Hughes was a particular mature age. Under RCW 9A.44.050(1)(b), second degree rape requires a different gravamen, without limitation to her age, that S.E.H. was incapable of consent by reason of physical helplessness or mental incapacitation. Other subsections specify additional discrete groups needing protection from preying actors such as the developmentally disabled from health care providers, residents of facilities for the mentally disordered or chemically dependent from supervisors, and frail elder or vulnerable adults from persons with a significant relationship. Finally, proof of one offense is not required to prove the other offense or elevate the other offense into a more serious crime.
¶ 12 Overall, two distinct protective purposes are served: (1) protecting the very young regardless of physical or mental status, and (2) protecting physically helpless or mentally incapacitated persons of any age who are incapable of protecting themselves from persons of any age. See Calle, 125 Wash.2d at 780-81, 888 P.2d 155. Although the faces of the relevant statutes do not specify multiple punishments, we conclude that the Blockburger presumptive test is satisfied. RCW 9A.44.050(1)(b) and RCW *987 9A.44.076(1) each contains one element not found in the other statute and thus, different evidence is required for conviction. Jackman, 156 Wash.2d at 747, 132 P.3d 136. The trial court did not err in denying Mr. Hughes' double jeopardy motion.
¶ 13 Affirmed and remanded for further proceedings consistent with this opinion.
I Concur: KULIK, J.
SCHULTHEIS, A.C.J. (dissenting).
¶ 14 The majority concludes that the two offenses here, second degree child rape and second degree rape, are not the same for the purposes of double jeopardy. Although the offenses initially appear to be different, those differences are illusory. Each crime simply requires proof of nonconsent because of the victim's status, which operates to make out a strict liability offense. See State v. Clemens, 78 Wash.App. 458, 467, 898 P.2d 324 (1995); State v. Abbott, 45 Wash.App. 330, 334, 726 P.2d 988 (1986). Therefore, I must respectfully dissent.
¶ 15 Notably the State could prove second degree rape by showing that the mental incapacity is caused by the victim's age. RCW 9A.44.010(4) defines incapacity as "that condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause." Our courts have long held and our legislature has long recognized that persons are disabled by virtue of their minority. E.g., Duffy v. Dep't of Soc. & Health Servs., 90 Wash.2d 673, 678-79, 585 P.2d 470 (1978). We have also noted that minors lack the legal capacity to consent to sexual relations because they are too immature to rationally or legally consent. Clemens, 78 Wash.App. at 467, 898 P.2d 324; Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 68, 124 P.3d 283 (2005).
¶ 16 Further, the "mental age" of a victim in a mental disability rape case can be used to determine whether the victim is capable of consent. State v. Ortega-Martinez, 124 Wash.2d 702, 714, 881 P.2d 231 (1994). And the condition of the victim in this case could be proven by the victim's appearance. See State v. Summers, 70 Wash.App. 424, 430-31, 853 P.2d 953 (1993) (finding testimony of second degree rape victim provided sufficient evidence from which a jury could determine mental incapacity and holding that a victim's mental ability is not always a topic requiring expert testimony); State v. Biggs, 57 Wash. 514, 516, 107 P. 374 (1910) (proving statutory rape with circumstantial evidence).
¶ 17 Moreover, the legislature has historically grouped the disabled and minors together for special treatment. See, e.g., RCW 4.16.190 (providing for the tolling of the statute of limitations for persons under 18 years old or who are "incompetent or disabled").
¶ 18 Even if the offenses at issue pass the Blockburger[1] test, the statutory language and structure lead to the conclusion that the legislature did not intend multiple punishments here. The Blockburger test is merely a useful canon of statutory construction and it is only one point of the inquiry. State v. Freeman, 153 Wash.2d 765, 776, 108 P.3d 753 (2005); Garrett v. United States, 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The test is "essentially a factual inquiry as to legislative intent," not a conclusive presumption of law. Garrett, 471 U.S. at 779, 105 S.Ct. 2407. Therefore, "[i]f the facts that must be proved for the two statutes are not the same, the court must then determine if there are other indicia of legislative intent that suggest the legislature did not intend to authorize multiple punishments for the same act." State v. Jackman, 156 Wash.2d 736, 750, 132 P.3d 136 (2006). This determination can be made with evidence of legislative intent that Blockburger's same elements test does not take into consideration.
¶ 19 In the two crimes here, there is no difference in the mens rea or the actus reus to draw a meaningful distinction between these offenses. That was not the case in State v. Calle, 125 Wash.2d 769, 888 P.2d 155 (1995). In Calle, the court noted a distinction in the actus reus  force versus the prohibited *988 relationship. Under the statutory scheme at issue here, the victim can be no more or less vulnerable or exploited by the reason of the strict liability imposed by the inability to consent, either by reason of the victim's age or condition. There is no more or less violence or force required in the two crimes. There is no more or less damage resulting from the two crimes.
¶ 20 The purpose of statutory rape statutes is to "protect persons too immature to rationally or legally consent." Clemens, 78 Wash. App. at 467, 898 P.2d 324. Both of the statutes at issue here are clearly meant to protect persons from sexual intercourse who are vulnerable and incapable of legal consent due to either their youth (second degree child rape) or other incapacitating condition (second degree rape). See Christensen, 156 Wash.2d at 68, 124 P.3d 283 (noting that child rape statutes in chapter 9A.44 RCW are for the protection of those who cannot rationally or legally consent).
¶ 21 The two crimes also have a defense in common for lack of knowledge. See RCW 9A.44.030(1) (providing a defense if the defendant did not know that the victim was mentally incapacitated); RCW 9A.44.030(2) (providing a defense if at the time of the offense the defendant reasonably believed the alleged victim to be a lawful age).
¶ 22 In State v. Birgen, 33 Wash.App. 1, 14, 651 P.2d 240 (1982), Division One of this court examined the third degree rape and statutory rape in the third degree statutes. It held that a defendant cannot be convicted of both nonconsensual rape and statutory rape based on age for a single act of intercourse. Then, in Calle, our Supreme Court cited Birgen for what it perceived to be "attempting to reach a double jeopardy analysis despite the concurrent sentence rule" then in effect.[2]Calle, 125 Wash.2d at 775, 888 P.2d 155. The Supreme Court nonetheless agreed with the ultimate reasoning in Birgen. Id.
¶ 23 Birgen examined the same statutory scheme and legislative history before the court today. It stated:
In 1975 the rape and carnal knowledge sections of the criminal code were replaced with sections dividing both "rape" and "statutory rape" into three degrees, similar to the present structure. LAWS OF 1975, 1st Ex.Sess., ch. 14, p. 172. The Legislature removed the requirement that the victim of a "rape" be over the age of 10, and added an offense of nonconsensual intercourse as third degree rape.
Birgen, 33 Wash.App. at 13, 651 P.2d 240.
¶ 24 From this revision, the Birgen court stated:
We find no indication, however, that by these changes the Legislature intended to permit multiple convictions where a single act of intercourse violated both the rape and the statutory rape sections. Rather, the legislative changes indicate an intent to further grade sexual offenses by the degree of force used and the age of the victim. The severity of the punishments for the different degrees of both rape and statutory rape indicate that the Legislature took into account the heinous nature of the crimes when defining them as it did.
Id. at 13-14, 651 P.2d 240.
¶ 25 In 1988 the legislature again revised the statutes. In this revision, the "statutory rape" crimes that described unlawful sexual intercourse were referred to as "child rape." Former RCW 9A.44.090 (LAWS OF 1988, ch. 145, §§ 12, 24). The new child rape statutes took into consideration the age differential between victim and perpetrator.
¶ 26 Significantly, the legislature also revised the indecent liberties statute at that *989 time, which proscribed certain sexual contact. It denoted a new crime, child molestation, which it broke down into three degrees, depending on the age differential between perpetrator and victim. RCW 9A.44.083, .086, .089 (LAWS OF 1988, ch. 145, §§ 5, 6, 7). Although the crime of indecent liberties remained to proscribe sexual contact by forcible compulsion or when the victim is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless. RCW 9A.44.100 (LAWS OF 1988, ch. 145, § 10).
¶ 27 The legislature, also in 1988, added two degrees of a crime that it denoted as sexual misconduct with a minor, which made unlawful sexual intercourse (first degree) or sexual contact (second degree) with a victim between 16 and 18 years old, when the perpetrator was at least 60 months older than the victim, is in a significant relationship to the victim, and abuses a supervisory position within that relationship in order to engage in sexual intercourse or contact. RCW 9A.44.093, .096 (LAWS OF 1988, ch. 145, §§ 8, 9).
¶ 28 As noted in Birgen, this shows a legislative intent to sort offenses by the degree of force and the age of the victim as well as the abuse of trust inherent to crimes based on the relationship between the perpetrator and victim. 33 Wash.App. at 14, 651 P.2d 240. This trend has continued. See RCW 9A.44.100.[3]
¶ 29 The Birgen court properly concluded:
[T]hat the Legislature has not authorized multiple rape convictions arising out of a single act of sexual intercourse violating more than one of the statutory sections defining rape and statutory [or child] rape. The history of the rape statutes shows legislative intent and judicial recognition that both the rape and the statutory [or child] rape statutes define a single crime of rape with the degree of punishment dependent on the underlying circumstances. The rape statutes continued to describe a single crime even after they were broken into separate statutory sections.
33 Wash.App. at 14, 651 P.2d 240.
¶ 30 Calle does not require a different result here. In Calle, our Supreme Court held that a single act of intercourse could support convictions for both incest and second degree rape. Again, although the court held that "the result in Birgen is sustainable" on double jeopardy grounds, the court distinguished the statutes involved in Birgen. Calle, 125 Wash.2d at 775, 781, 888 P.2d 155. The Calle court noted that the purpose of the rape statutes in chapter 9A.44 RCW  which includes the nonconsensual rape and statutory (or child rape) statutes  is to prohibit unlawful sexual conduct based on aggression, power, and violence. Id. at 781, 888 P.2d 155. And, as previously observed, I would conclude that the purpose further encompasses the abuse of power and trust inherent to the age differential and relationship between the victim and the perpetrator.
¶ 31 The Calle court differentiated that purpose of the rape statutes from that of the incest statute, which is "to prevent mutated birth but also to promote and protect family harmony, to protect children from the abuse of parental authority, and `because society cannot function in an orderly manner when *990 age distinctions, generations, sentiments and roles in families are in conflict.'" Id. (quoting State v. Kaiser, 34 Wash.App. 559, 566, 663 P.2d 839 (1983)). There is no such distinction here.
¶ 32 The court also noted that the second degree rape offense and the incest offense are defined in two separate sections of the criminal code. Calle, 125 Wash.2d at 780, 888 P.2d 155. "Incest and bigamy now constitute RCW 9A.64, Family Offenses, while second degree rape is defined in RCW 9A.44, Sex Offenses." Id. Thus, the court concluded that the "differing purposes served by the incest and rape statutes, as well as their location in different chapters of the criminal code, are evidence of the Legislature's intent to punish them as separate offenses." Id. The same is not true here. The statutes here are both in chapter 9A.44 RCW and they serve a similar purpose.
¶ 33 The two statutes at issue here  second degree rape of a child and second degree rape  are more aptly described by Birgen than by Calle.
¶ 34 Since legislatures often produce little evidence of their intent regarding multiple punishment, the rule of lenity is often an appropriate tool of statutory construction in such contexts. See Busic v. United States, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). The rule "merely means that if [the legislature] does not fix the punishment for a [state] offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Washington courts have adopted these principles and recognized that in the absence of a clear indication that the legislature intended multiple punishment for the unitary conduct, the court should apply the rule of lenity to presume that the legislature did not intend multiple punishment. Jackman, 156 Wash.2d at 751, 132 P.3d 136. The rule applies here.
¶ 35 Because this court may not vary the statutory scheme from that enacted by the legislature, Birgen, 33 Wash.App. at 14, 651 P.2d 240, there is no clear indication of legislative intent to impose multiple punishment, and in light of the clear precedent set forth in Calle and Birgen, I would reverse.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[1] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[2] As aptly explained in State v. Eaton, 82 Wash. App. 723, 728, 919 P.2d 116 (1996): "When Birgen was decided, Washington followed the concurrent sentence rule. Under that rule, when the State brings several charges against a defendant for the same act or transaction and obtains convictions on all counts, no double jeopardy issue arises if the defendant receives concurrent sentences that do not exceed the penalty for any of the offenses because he is being punished but once for his unlawful act. Calle, 125 Wash.2d at 772, 888 P.2d 155. Because the defendant in Birgen received concurrent sentences for his multiple convictions, the concurrent sentence rule required the court to reject his double jeopardy claim. It nonetheless reversed, concluding that concurrent sentences could be reviewed `for non-double jeopardy reasons.' 33 Wash.App. at 5, 651 P.2d 240."
[3] Later, the legislature expanded the definition of the crime to include:

"(c) When the victim is a person with a developmental disability and the perpetrator is a person who is not married to the victim and who:
"(i) Has supervisory authority over the victim; or
"(ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense;
"(d) When the perpetrator is a health care provider, the victim is a client or patient, and the sexual contact occurs during a treatment session, consultation, interview, or examination. It is an affirmative defense that the defendant must prove by a preponderance of the evidence that the client or patient consented to the sexual contact with the knowledge that the sexual contact was not for the purpose of treatment;
"(e) When the victim is a resident of a facility for persons with a mental disorder or chemical dependency and the perpetrator is a person who is not married to the victim and has supervisory authority over the victim; or
"(f) When the victim is a frail elder or vulnerable adult and the perpetrator is a person who is not married to the victim and who:
"(i) Has a significant relationship with the victim; or
"(ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense." RCW 9A.44.100(1).