**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55392-9-II |
| Respondent, | |
| v. | UNPUBLISHED  OPINION |
| TRE JORDAN BUTTERFIELD | |
| Appellant. | |

WORSWICK, J. — Tre Butterfield appeals his convictions and sentence for one count of third degree child rape and one count of second degree rape.  The victim was unconscious during the crime and was told of the crime by witnesses when she regained consciousness.  The victim then told a sexual assault nurse examiner (SANE) that she had been raped, based in part on the information told to her by the witnesses.  At trial, Butterfield admitted to sexual intercourse and admitted his guilt to third degree child rape, but disputed he committed second degree rape.  On appeal, Butterfield argues that the trial court erroneously merged his two convictions without dismissing the lesser offense in violation of the prohibition against double jeopardy, and that the trial court abused its discretion when it admitted portions of the SANE's testimony in violation of the rule against double hearsay.

The State concedes that the trial court erroneously merged Butterfield's convictions, and that his third degree child rape conviction must be vacated.  We accept the State's concession.

Next, the State argues that because Butterfield admitted to sexual intercourse at trial, the only issue remaining for the jury was the issue of consent. Thus, any double hearsay admitted describing sexual intercourse was harmless. We agree with the State. Accordingly, we affirm Butterfield's conviction for second degree rape and remand to the trial court to vacate the third degree child rape conviction and to resentence Butterfield.

## FACTS

### I. BACKGROUND

On May 2, 2015, Butterfield, then age 20, attended a house party at Cory Owens's house. LR, BB, Owens, and Matt McMillan were also there. LR was 15 at the time and BB was approximately the same age.

At the party, LR drank alcohol, quickly drinking a Four Loko and multiple shots of rum. LR became drunk and got sick to the point of throwing up. BB, McMillan, and Owens took LR to Owens's bedroom to lay down, and LR passed out. BB, McMillan, and Owens left LR alone in the bedroom. When they left LR, she was wearing a sweatshirt and spandex pants. BB went to check on LR several times during the night.

At some point, Owens noticed Butterfield was missing from the party and went to look for him. Owens heard moaning and kissing sounds coming from his bedroom, returned to the party, and told the others that he thought Butterfield was in the bedroom "messing with that girl." Verbatim Report of Proceedings (VRP) (Sept. 29, 2020) at 75-76. BB and McMillan went to the bedroom and discovered Butterfield on top of LR. Butterfield rolled off of LR, and BB and McMillan saw Butterfield's penis though his zipper. LR's pants and underwear were around her

ankles. LR was still asleep. BB attempted to wake LR up by yelling at her. LR briefly woke up when she heard BB screaming and realized her pants and underwear were off, but she fell back asleep.

The next morning, LR discovered her underwear on inside-out and physically felt as if she had sex the night before. She had not given Butterfield consent to have sex with her.

On May 4, BB and LR visited a school counselor, who contacted law enforcement. That evening, LR visited Providence St. Peter's Hospital in Olympia, where Nurse Marnie Rathbun, a SANE nurse, examined LR. During the examination, LR provided Rathbun with information about the rape.

## II. TRIAL AND SENTENCING

The State charged Butterfield with rape of a child in the third degree and rape in the second degree. The matter proceeded to a jury trial.

During his opening statement, Butterfield's counsel conceded that Butterfield had sexual intercourse with LR, stating, "Tre Butterfield, on May 2nd, 2015 had sex with [LR]. She was less than 16 years old. That was five years and almost five months ago. He is guilty of rape of a child in the third degree." VRP (Sept. 29, 2020) at 24. Counsel concluded his opening statement with:

> But, you know, today my client is stepping forward. This is the first day that he is stepping forward and he's looking at you and he's telling you, ladies and gentlemen of this fine jury, Ladies and Gentlemen of Lewis County jury, we are in fact—he is, in fact, accepting responsibility for rape of a child.

VRP (Sept. 29, 2020) at 26.

3

Witnesses testified as above. LR additionally testified that she remembered drinking, passing out, and waking up at some point in the night to BB screaming at her. She testified she did not remember anything other than being shouted awake from the time she passed out until waking up the next morning.

Nurse Rathbun testified as to LR's comments to her during the SANE examination. Rathbun testified that LR told her that her friends said they moved her to the bedroom when she fell asleep, then later found Butterfield in the room with LR. Rathbun testified, in pertinent part:

> [LR] told me she had been at a friend's house on that night drinking. They were watching movies, that she had gotten sleepy, fallen asleep on the couch. Her friends then transferred her to a bedroom. Friends went to search for the male that she identified. They weren't able to find him in the bathroom after he said he was getting up to go. And then they found him in the room with her.
>
> . . . .
>
> [LR] said that she had been drinking, she was asleep. That when had [sic] her friends came in the room, they turned on the light, started yelling that [Butterfield] was having sex with her and he rolled off of her. She then was crying and upset. . . .
>
> . . . .
>
> She said she could just hear yelling and screaming. And then yelling for her to wake up, telling her to wake up.

VRP (Sept. 30, 2020) at 144-45.

Butterfield objected, arguing that LR's statements to Rathbun were double hearsay because they included statements from BB and others to LR following the rape. The trial court admitted Rathbun's testimony as an exception to hearsay, ruling her testimony was reasonably pertinent to medical diagnosis or treatment.

4

In his closing argument, Butterfield's counsel did not deny that Butterfield had sexual intercourse with LR, but rather argued only that there was a reasonable doubt regarding LR's lack of consent.

The jury found Butterfield guilty of count I: third degree child rape, and count II: second degree rape.

At sentencing, the court noted:

> Count I either merges or I dismiss it. I think probably the appropriate thing at this point would be to dismiss Count I. That's—that was the rape of a child in the third degree, but because they were the same conduct, that's the one that we went to trial on. And because they were the same conduct, the rape in the second degree is the controlling one, as it's the one carrying the highest range.

VRP (Dec. 9, 2020) at 60-61.

Later in the sentencing hearing, the court revisited this topic. The following exchange occurred between the court and the parties:

> THE COURT: Okay. The other thing procedurally, I'm trying to figure out the best way to, in [this case], I don't know that it would be best or even procedurally correct to dismiss Count I, just because a jury has already rendered a verdict on that. I suppose there could be a motion under [CrR] 7.8.
>
> [Defense counsel], have you seen this before? I agree it's same similar conduct and that it shouldn't count as a point.
>
> [DEFENSE COUNSEL]: The appropriate thing would be to have it merged.
>
> [STATE]: That's completely fine by me.
>
> THE COURT: I think that that procedurally would be the cleanest and most appropriate way to do that so. Okay.

VRP (Dec. 9, 2020) at 68-69.

5

In the judgment and sentence form, the court recorded both counts I and II, but did not include count I in calculating Butterfield's offender score. The court sentenced Butterfield to 60 months on count I and 210 months on count II, but entered only count II in the portion of the form for confinement for sex offenses.

Butterfield appeals.

ANALYSIS

Butterfield argues that the trial court violated double jeopardy principles when it merged his third degree child rape and second degree rape convictions without dismissing the lesser charge. The State concedes that Butterfield's two convictions violate double jeopardy, and we accept its concession. Next, Butterfield argues that the trial court erred when it admitted Nurse Rathbun's testimony because her testimony included double hearsay. The State argues that the trial court properly admitted Rathbun's testimony as a statement made for the purpose of medical treatment. In the alternative, the State argues that Rathbun's testimony was harmless because it described sexual intercourse, which Butterfield admitted to at trial. We agree with the State's alternative argument. Even assuming that the trial court erred in admitting Rathbun's testimony, it was plainly harmless.

I. DOUBLE JEOPARDY

Butterfield argues that double jeopardy bars his conviction for both third degree child rape (count I) and second degree rape (count II), and that we should vacate the lesser offense. The State concedes that count I must be vacated, and we accept the State's concession.

6

We review double jeopardy claims de novo as a question of law. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). The double jeopardy principles bar multiple punishments for the same offense. *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. We examine statutory language to determine if the relevant statutes expressly permit punishment for the same act or transaction. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

RCW 9A.44.079(1) provides: "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and the perpetrator is at least forty-eight months older than the victim."

RCW 9A.44.050(1)(b) provides: "A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." A child is legally incapable of consent. *State v. Clemens*, 78 Wn. App. 458, 467, 898 P.2d 324 (1995).

In *State v. Hughes*, 166 Wn.2d at 683-84, our Supreme Court held that second degree child rape and second degree rape convictions were the same in fact and law and convictions for both crimes violated the prohibition against double jeopardy because the crimes were based on

one act of sexual intercourse with the same victim.[1]  The *Hughes* court reasoned that "both statutes require proof of nonconsent because of the victim's status."  166 Wn.2d at 684.

The State agrees that *Hughes* controls here and concedes that Butterfield's convictions for count I and II violated double jeopardy.  "The remedy for a double jeopardy violation is vacation of the conviction for the lesser offense."  *State v. Albarran*, 187 Wn.2d 15, 18, 383 P.3d 1037 (2016).  Here, the lesser of the two offenses is rape of a child in the third degree.[2] Accordingly, the trial court must vacate the third degree child rape conviction.

## II.  HEARSAY WITHIN HEARSAY

Butterfield next argues that the trial court erred when it admitted portions of Nurse Rathbun's testimony because it contained hearsay within hearsay—or double hearsay—in violation of ER 805.[3]  The first level of hearsay contained the statements BB and others made to

---

[1] "A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim."  RCW 9A.44.076(1).

[2] RCW 9A.44.050(2) establishes that rape in the second degree is a Class A felony.  RCW 9A.44.079(2) establishes that rape of a child in the third degree is a Class C felony.

[3] Butterfield appears to object to Rathbun's testimony where she said:

> [LR's] friends then transferred her to a bedroom.  Friends went to search for the male that she identified.  They weren't able to find him in the bathroom after he said he was getting up to go.  And then they found him in the room with her.
>
> . . . .
>
> [LR] said that she had been drinking, she was asleep.  That when had [sic] her friends came in the room, they turned on the light, started yelling that [Butterfield] was having sex with her and he rolled off of her.  She then was crying and upset.

VRP (Sept. 30, 2020) at 144-45.

LR about the rape and the events surrounding it. The second level contained LR's statements to Rathbun, in which LR told Rathbun the information that BB must have told LR because LR was unconscious at the time. Butterfield argues that there is no hearsay exception for the first level of statements that BB and others made to LR to fill LR in on what occurred while she was unconscious. Butterfield further argues that the statements were not made for medical diagnosis but to attribute fault to Butterfield by identifying him as the assailant.

The State argues that the trial court properly admitted Rathbun's testimony based on LR's account of the rape under the exception to hearsay for the purposes of medical diagnosis under ER 803(a)(4). In the alternative, the State argues that any impermissible testimony from Nurse Rathbun was harmless error because Butterfield admitted to having sexual intercourse with LR on the night of the crime.

We agree with the State's alternative argument. Even assuming without deciding that Rathbun's testimony was improper double hearsay under ER 805, that testimony was plainly harmless.

We review the trial court's evidentiary rulings for an abuse of discretion. *State v. Burke*, 196 Wn.2d 712, 740, 478 P.3d 1096, *cert. denied*, 142 S. Ct. 182, 211 L. Ed. 2d 74 (2021). "We will not reverse the trial court's decision 'unless we believe that no reasonable judge would have made the same ruling.'" *Burke*, 196 Wn.2d at 740-41 (quoting *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007)). "A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds." *State v. Alvarez-Abrego*, 154 Wn. App. 351, 362, 225 P.3d 396 (2010). But any such error is harmless "[i]f the untainted evidence is so

overwhelming that it necessarily leads to a finding of the defendant's guilt." *Burke*, 196 Wn.2d at 739 (alteration in original) (quoting *State v. Koslowski*, 166 Wn.2d 409, 431, 209 P.3d 479 (2009)).

An out-of-court statement offered to prove the truth of the matter asserted is inadmissible hearsay unless an exception applies. ER 801(c), 802. Statements made for the purposes of medical diagnosis or treatment are an exception to the bar on hearsay. ER 803(a)(4) (allowing statements "describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."). "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." ER 805.

A trial court's admission of testimony from a SANE nurse that identifies an assailant is harmless where the assailant's identity was established through other means. *Burke*, 196 Wn.2d at 742-43. Even where there is nothing in the record to suggest that portions of a victim's statement were made to promote medical treatment, those statements are harmless when the untainted evidence otherwise establishes the defendant's guilt. *Burke*, 196 Wn.2d at 742-73; *Alvarez-Abrego*, 154 Wn. App. at 369-70.

Here it was clear from Butterfield's opening statement and closing argument that his trial strategy was to admit to third degree child rape and avoid the second degree rape conviction. In those statements, Butterfield admitted to everything that Rathbun testified to, with the exception of LR's unconsciousness and, therefore, LR's consent. He admitted to having sex with LR. He

admitted being guilty of third degree child rape. The identity of the assailant was never in doubt. Accordingly, Rathbun's testimony identifying Butterfield as the assailant was harmless.

Moreover, any error here was harmless because the untainted evidence of Butterfield's guilt of second degree rape was overwhelming.[4] *Burke*, 196 Wn.2d at 739. Eyewitnesses testified consistently with the SANE testimony. BB and LR both testified that LR drank to the point of being sick and falling asleep. LR, BB, and McMillan all testified that LR was drunk and incapacitated. LR testified to her intoxication and to not remembering portions of the night. Owens testified to hearing noises coming from his bedroom and telling the others that he thought Butterfield was in the bedroom with LR. McMillan and BB both testified to seeing Butterfield on top of LR with his penis out, while LR was asleep with her pants around her ankles.

This corroborating testimony was overwhelming evidence of all elements of second degree rape, especially of LR's inability to consent. And Butterfield's strategy was not to contest the child rape and admit to sexual intercourse. Accordingly, we hold that even assuming the trial court erred when it admitted portions of Rathbun's testimony, such admission was harmless.

---

[4] RCW 9A.44.050(1)(b) provides: "A person is guilty of rape in the second degree when . . . the person engages in sexual intercourse with another person . . . [w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated."

No. 55392-9-II

CONCLUSION

We accept the State's concession that the trial court erroneously merged counts I and II of Butterfield's convictions. Accordingly, we reverse Butterfield's third degree child rape conviction because it is the lesser offense. We hold that any double hearsay that the trial court admitted coming from Nurse Rathbun's testimony was harmless because the evidence against Butterfield was overwhelming, and any testimony identifying Butterfield as the assailant was harmless because he admitted to having sex with LR on the night of the crime. Accordingly, we affirm Butterfield's conviction for second degree rape, and remand to the trial court to vacate his conviction for third degree child rape and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Veljacic, J.

12