[No. 59579-8.   En Banc.   July 1, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. HARVEY C. KNUTSON, *Petitioner*.

*Robert J. Wayne,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Theresa L. Fricke, Senior Prosecuting Attorney,* and *John L. Belatti, Deputy,* for respondent.

BRACHTENBACH, J. — Defendant was convicted of three counts of third degree rape of a child and two counts of communication with a minor for immoral purposes. On review, he challenges the trial court's failure to disclose to him a portion of the complaining witness' medical records which the court reviewed in camera prior to trial. The portion of the complaining witness' medical records referred to by defendant contained a nurse's note that "[the complaining witness] has been prostituting in the past." The issue in this case is whether the defendant's due process rights were violated by the trial court's failure to disclose the nurse's notes to it. We hold that the trial court did not commit error, and we affirm defendant's convictions.

The few basic facts upon which the defendant and the complaining witness agree establish the following. Defendant first met the complaining witness in the fall of 1989. The complaining witness was 14 years old at this time, and defendant was 67 years old. Between this meeting and November 25, 1989, defendant took nude pictures of the complaining witness on at least one occasion and had sexual intercourse with her on at least three occasions. Defendant gave the complaining witness money and other gifts for engaging in these sexual acts. In addition, defendant arranged for a fake identification for the complaining witness indicating that she was 21 and took her to a public health clinic to obtain birth control pills. On November 28, 1989, the complaining witness told the adult with whom she was residing about the relationship. After the complaining witness went to the police, the police searched defendant's home pursuant to a search warrant and found nude pictures of the complaining witness behind a false wall in defendant's broom closet.

The specific testimony given by the complaining witness indicated that their relationship began in early October of 1989. According to her testimony, defendant forced her to pose for the first set of nude pictures by threatening her with a handgun and forced her to pose for more pictures and to have intercourse on 23 occasions by threatening to expose the first set of pictures. She denied having asked defendant for money or having offered to engage in sexual acts for money. She also stated that she threw away or burned most of the money given to her by defendant.

The complaining witness admits that she did not expressly tell defendant she was 14 years old. However, she testified that she never represented her age as being older than 14, and that she implied that her age was 14 by telling him that her brother is 5 years older than she is and that the brother was about to turn 19.

In contrast, defendant testified that their first meeting did not occur until the first week of November 1989. He testified that on the day he met her, he took her out to

breakfast at her request and that she ordered and was served an alcoholic drink. According to defendant's testimony, the complaining witness told him she was 21, and although he did not believe she was 21, he did believe that she was 18 or 19. He explained that he took her to get a false identification so he would not get in trouble for buying her drinks.

Defendant further testified that when he took the complaining witness out for breakfast, again at her request, a day or two later, she told him she had spent the previous night having sex with the cook and that she made money by selling drugs and through prostitution. Defendant explained that he agreed to take pictures of her for $40 after she told him she wanted money and agreed to intercourse for $50 a few days later after she again told him she wanted money. He denied ever having threatened her with a gun or otherwise to get her to pose for the pictures or to engage in intercourse, and he stated that they only had intercourse three times. Defendant admitted taking her to get birth control pills, but stated that it was at her request. He said he was not concerned about birth control because he had had a vasectomy and because he used condoms.

Defendant testified that he was the one who terminated the relationship on November 27, 1989. On that day defendant had taken the complaining witness to a travel agency to purchase a plane ticket for her. Defendant told the travel agent that he was her grandfather. In front of the travel agent, the complaining witness stated that she was only 14 years old. Defendant stated that this is when he first was made aware of her true age and that he immediately terminated the relationship following this revelation, despite the fact that she told him she wanted to have intercourse again to get some money for her trip. The complaining witness admits that no intercourse occurred after the visit to the travel agency. Defendant explained that he hid the nude pictures of the complaining witness in his broom closet only after learning her true age at the travel agency.

. Defendant was charged with three counts of rape of a child in the third degree, RCW 9A.44.079, and two counts of sexual exploitation of a minor, RCW 9.68A.040. Defendant asserted the affirmative defense of misrepresentation of age, and this was the only issue that was seriously contested at trial. It is an effective defense to the third degree rape of a child charge that the defendant reasonably believed the complaining witness to be at least 16 years of age based on representations by the complaining witness. RCW 9A.44-.030(2), (3)(c). At the time of trial, former RCW 9.68A.110(3) made it an effective defense to the charge of sexual exploitation of a minor that "the defendant reasonably believed the alleged victim to be at least eighteen years of age based on declarations by the alleged victim." Laws of 1984, ch. 262, § 10, p. 1435.

Based on statements the complaining witness made to a defense investigator prior to trial, defendant sought access to the complaining witness' medical and psychiatric records from three different institutions. At that time defendant had no specific knowledge concerning the contents of the records. The court ordered each institution to surrender the requested records to the court. Following in camera review by the pretrial judge, defendant was denied access to the requested records.

Immediately prior to trial, defendant requested that the trial judge review the pretrial ruling concerning access to the medical and psychiatric records. The trial judge declined to review the records and indicated that any review of the pretrial ruling would have to be sought through the appellate process.

Defendant was convicted on all three counts of rape of a child in the third degree. On the two counts of sexual exploitation of a minor, defendant was convicted of the lesser included offense of communication with a minor for immoral purposes, RCW 9.68A.090. The former RCW 9.68A.110(3) affirmative misrepresentation of age defense was also applicable to a charge of communication with a minor for immoral purposes. Laws of 1986, ch. 319, § 3, p. 1495.

From its review of the complaining witness' medical records, the Court of Appeals discovered the nurse's note that the complaining witness had been "prostituting in the past." Following this discovery, the Court of Appeals entered an order permitting counsel access to the portion of the complaining witness' medical records that contained this note. In an unpublished opinion, the Court of Appeals held that the trial court erred in not disclosing the nurse's note to defendant. However, the Court of Appeals further held, with one judge dissenting, that the error was harmless and that the trial court should be affirmed. *State v. Knutson*, noted at 66 Wn. App. 1003 (1992). We likewise affirm the trial court; however, in doing so, we reject the Court of Appeals' finding of due process error.

Although defendant bases his challenge to the trial court's failure to disclose the nurse's note on the confrontation and compulsory process clauses of the state and federal constitutions, we agree with the United States Supreme Court that traditional due process analysis provides a more suitable framework for analyzing discovery issues. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987). In *Ritchie*, the United States Supreme Court explored the applicability of the confrontation and compulsory process clauses to a criminal defendant's discovery rights. The United States Supreme Court Justices were divided on the issue of the applicability of the confrontation clause to discovery matters, and no position was supported by a majority. However, five Justices were able to agree on a disposition of the discovery issue under a due process analysis. *Ritchie*, 480 U.S. at 55-58.

Justice Blackmun, who did not join in the 4-Justice plurality's holding that the confrontation clause is not applicable to discovery issues, joined in the due process analysis because, in his view, "the procedure the Court has set out . . . is adequate to address any confrontation problem." *Ritchie*, 480 U.S. at 65 (Blackmun, J., concurring in part and concurring in the judgment). We agree that the due process guaranty of access to material evidence in the possession of the

court, including material impeachment evidence, which will be discussed in greater detail below, will adequately protect defendant's right of confrontation.

As to Ritchie's compulsory process clause argument, the Court explained:

> [T]he Court traditionally has evaluated claims such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment. Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case.

(Citations omitted.) *Ritchie*, 480 U.S. at 56. We agree that the issue of whether defendant should have been allowed access to the nurse's note is more appropriately analyzed under the "clear framework" of due process analysis instead of under an "unsettled" compulsory process clause analysis. *Cf. State v. Gonzalez*, 110 Wn.2d 738, 750, 757 P.2d 925 (1988) (discussing a defendant's constitutional rights to discovery in terms of a due process analysis).

■ The due process analysis of a discovery issue starts from the premise that due process affords a criminal defendant a right of access to evidence that is "both favorable to the accused and material to guilt or punishment", at least where the court or the prosecution is in possession of the evidence. *Ritchie*, 480 U.S. at 57 (citing *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963)). This due process rule of disclosure applies equally to substantive evidence and to impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985).

■ For purposes of the due process rule, evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *In re Rice*, 118 Wn.2d 876, 887, 828 P.2d 1086 (quoting *Bagley*, 473 U.S. at 682; *Ritchie*,

480 U.S. at 57), *cert. denied*, 113 S. Ct. 421 (1992). A " 'reasonable probability' " has been defined as "a probability sufficient to undermine confidence in the outcome." *In re Rice*, 118 Wn.2d at 887 (quoting *Bagley*, 473 U.S. at 682). This court has emphasized that what is required is more than a "mere *possibility*" that evidence "*might* have affected the outcome of the trial". *State v. Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

Wrapped up in this standard of materiality are issues of admissibility; if evidence is neither admissible nor likely to lead to admissible evidence it is unlikely that disclosure of the evidence could affect the outcome of a proceeding. *See United States v. Kennedy*, 890 F.2d 1056, 1059 (9th Cir. 1989) (holding that "[t]o be material under *Brady*, undisclosed information or evidence acquired through that information must be admissible"), *cert. denied*, 494 U.S. 1008 (1990).

To be admissible, evidence must first be relevant, that is it must make the existence of a fact of consequence to the case more likely or less likely than without the evidence. ER 401. In this case, because the only issue contested at trial was whether the complaining witness misrepresented her age to the defendant, the nurse's note would be relevant only if it would make it more likely that the complaining witness misrepresented her age. In addition, to be admissible, the probative value must not be substantially outweighed by the risk of unfair prejudice under ER 403. *See State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983) (explaining that the admission of sexual history evidence could lead to "acquittals based on prejudice against the victims' past sex lives"). Finally, for this particular evidence to be admissible, an analysis of Washington's rape shield statute, RCW 9A.44-.020, would be required.[1] We have doubts that the nurse's note would meet any of these steps in the admissibility

---

[1]Although not raised by the State, the physician-patient privilege and the rules against the use of hearsay evidence are also potential bars to the admissibility of the nurse's note.

analysis. However we do not base our decision of this case on the admissibility status of the evidence.

Instead, we decide this case on the basis that the nurse's note, even if found to be admissible, does not meet the ultimate due process standard of materiality; that is, there is no reasonable probability that the outcome of this case would have been different had the nurse's note been disclosed to defendant. First, it is not clear what the basis for the nurse's observation was. We cannot tell whether the nurse was simply recording a statement made by the complaining witness or whether the nurse was making an inference or assumption based on facts not recorded in her notes. Second, the notation made is very vague as to meaning, time, and frequency. Third, because the nurse's note is devoid of any factual detail, it is impossible to tell whether this case bears any factual similarity to events referred to in the nurse's note. Finally, defendant's argument concerning the value of the nurse's note bears little, if any, connection to the only issue in this case, which is whether the complaining witness misrepresented her age.

Defendant argues that the nurse's note is material because it is relevant to the complaining witness' credibility. Specifically, defendant is arguing that the nurse's note contradicts the complaining witness' testimony at trial, at least by implication. At trial the complaining witness testified that she did not suggest the exchange of intercourse or explicit pictures for money, that she did not agree to the exchange, that she did not want the money defendant gave her, and that she threw away or even burned most of the money defendant gave her. Defendant argues that all of this was part of an attempt by the prosecution to portray the complaining witness as an innocent young girl who would never consider exchanging sexual conduct for money. It is this implied characterization as well as her testimony that defendant seeks to impeach with the nurse's note concerning past prostitution activity.

However, we again emphasize, as to the offenses for which defendant was convicted, the only issue at trial was whether

the complaining witness misrepresented her age. Significantly, consent is not an issue in this case because neither of the crimes of which defendant was convicted have absence of consent as an element. RCW 9A.44.079; RCW 9.68A.090. Therefore, as the Court of Appeals pointed out, the nurse's note is only material if the defendant can tie it to the misrepresentation of age issue. At best, the inference would be that because the nurse's note tends to challenge the accuracy of the implication of unwillingness to engage in sexual acts for money, created by the complaining witness' testimony, she may also have been inaccurate in her testimony about what she told defendant concerning her age.

Although we are sensitive to the importance impeachment evidence can have in sexual assault cases where the complaining witness and the accused are the only witnesses, we hold that the connection between the nurse's note and the misrepresentation of age issue is too tenuous to create a reasonable probability that the outcome of defendant's trial would have been different if he had had access to this evidence. This is particularly true in this case where the entire scope of the defendant's and the complaining witness' actions were before the jury, where the undisclosed evidence is extremely vague, and where the undisclosed evidence lacks sufficient detail to permit comparison to the present case.

Our confidence in the outcome of defendant's trial is not undermined. The undisclosed evidence is not material, and the trial court did not commit error. Defendant's convictions are affirmed.

ANDERSEN, C.J., and DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.