# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49357-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PAUL L. TETERS, | |
| Appellant. | |

BJORGEN, J.P.T.[*] — Paul Teters appeals from convictions of one count of attempted second degree child rape and one count of second degree child molestation.

He argues that (1) the trial court abused its discretion by allowing the prosecution to amend the information after trial began, (2) his convictions of attempted rape and child molestation violate double jeopardy, (3) the prosecutor committed misconduct, (4) the trial court violated his right to present a defense by refusing to disclose the victim's therapy records, (5) the trial court improperly imposed conditions of community custody, and (6) he received ineffective assistance of counsel.

We affirm Teters' conviction of attempted second degree child rape, vacate his conviction of second degree child molestation on double jeopardy grounds, and remand for the

---

[*] Judge Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

trial court to resentence Teters on his conviction of attempted second degree child rape and to revise his conditions of community custody consistently with this opinion.

FACTS

In 2014, HL,[1] a 12 year old girl, attended a Fourth of July party at the home of a relative of her mother's boyfriend, Patrick Teters. There were about 100 people at the party with a lot of activities. HL spent most of the day hanging out with the other children, but some of the time she was with Patrick Teters' brother, Paul Teters (the defendant, whom we refer to as Teters).

HL described several incidents throughout the day with Teters that made her feel uncomfortable. In one, HL testified that she rode on the back of Teters' all-terrain vehicle and was uncomfortable when he drove fast and told her to hold on tighter. At another time, HL was downstairs in the house charging her phone when Teters entered the room and playfully took her phone and tried to look through her pictures. HL thought that during this time, Teters was pushing her with his hand on the zipper of her pants, which seemed to be "really inappropriate," but she also admitted that she thought at the time it might have been an accident. Verbatim Report of Proceedings (VRP) (Vol. III) at 345.

HL said that at another time that day, Teters asked her to show him her routine from her dance team. She did and it included a move that showed her underwear, about which Teters made some comments as to how it was "adult underwear" and not "appropriate" of her to be "wearing scandalous things." VRP (Vol. III) at 348. At another time, Teters offered to help HL do some pull-ups; she testified that he kept "grabbing [her] right there," putting his hand on her

---

[1] *See* Division II General Order 2011-1, *In re the Use of Initials or Pseudonyms For Child Witnesses in Sex Crime Cases.*

buttocks and in between her legs helping her do the pull-ups. VRP (Vol. III) at 346-47. HL said she wanted it to stop, but did not say anything about these incidents and did not believe someone would try to do something like that.

After watching the fireworks, HL went into a room with some other kids to watch television. HL was going to sleep on the bed in the room while her mother and Patrick were sleeping on the floor. Teters came in and started watching the movie, sitting on the edge of the bed; HL was under the blanket and he was by her feet. Sometime after Teters sat down next to her, HL fell asleep. At some point, HL said that she woke up when she felt someone's hand in her pants, "trying to move his hands around." VRP (Vol. III) at 359.[2] She said that when she woke up, Teters' hand was inside her underwear, touching her vagina, "moving around" and "trying to feel [her]." VRP (Vol. III) at 360. HL said he "tried to go inside" but she kept moving away. VRP (Vol. III) at 360-61. When asked if his finger ever went inside, she responded, "I felt that it did, but I just moved away." VRP (Vol. III) at 361.

HL explained that she did not yell or wake her mom because she did not want to cause a scene. She said that she told Teters to stop, leave the room and go to bed, but he did not respond. HL said that after she became louder and pushed him away more, he pretended like he just woke up, mumbled an apology about having fallen asleep, and walked out of the room.

HL's mother woke up and started comforting her and asking her what happened. HL started crying and told her mother that Teters was trying to touch her, but was not specific about where or how she had been touched. HL later gave inconsistent accounts in an interview with defense counsel and, in her testimony at trial as to whether Teters ever penetrated her vagina, she

---

[2] Several of the witness's references in describing this episode are to "he," "him," or "his." The context is clear that she is referring to Teters.

admitted that she was "confused on what happened." VRP (Vol. III) at 385-87. HL's mother testified that she saw Teters lying next to HL, but could not see his hands or determine for sure whether he was touching HL.

HL's mother called the police, telling them that she thought Teters had been touching her daughter "on her vagina." VRP (Vol. IV) at 485. The police arrived in the early morning, and a detective "bagged"[3] Teters' hands to preserve possible DNA (deoxyribonucleic acid) evidence soon after his arrival at the house around 2:30 a.m. VRP (Vol. IV) at 494-95. Teters was in an agitated state when the police woke him up, which he explained was due to PTSD (post-traumatic stress disorder). The detective did not obtain swabs from HL's genital area, nor were such swabs obtained at a forensic interview about three weeks later.

Dr. Erin Meadows conducted the examination of HL on July 5, 2014. Meadows asked HL what happened, and HL said someone had touched her and "put his hands into her pants and felt her genitalia with his fingers." VRP (Vol. V) at 671. Meadows indicated in her chart that the concern was for sexual assault and that HL did not complain of any pain but "had included a foreign body penetration." VRP (Vol. V) at 671.

At trial, Wendy Kashiwabara, who had previously worked at the state forensic lab, described how DNA can be transferred either by direct physical contact or "secondary" contact; for example, from two people touching the same item. VRP (Vol. IV) at 556-57. She noted that the DNA would be the same in each situation but that there would be a higher likelihood of DNA transfer if there was a bodily fluid involved. A swab of Teters' left finger revealed DNA consistent with both Teters and HL.

---

[3] This essentially involves wrapping the subject's hands in a bag to prevent DNA evidence from being contaminated, washed off, or destroyed.

Teters' jury trial was held on May 16, 2016. Just before trial began, the State filed an amended information charging two counts in the alternative: count 1, second degree child rape, and count 2, second degree child molestation. After the testimony of several witnesses, including HL, the State moved to amend the information again to charge three separate counts: one count of second degree child rape, one count of attempted second degree child rape, and one count of second degree child molestation. Defense counsel objected, but the trial court accepted the second amended information. Defense counsel expressed concern about the potential for three convictions for one incident, but the State and trial court assured him that the matter would be resolved at sentencing because the potential convictions would be treated as the same criminal conduct.

Teters testified on his own behalf and denied touching HL inappropriately. He specifically denied ever reaching under the covers, touching HL's vagina, or trying to molest her or engage in any intentional sexual conduct.

Prior to the incident, HL was diagnosed with an anxiety disorder. HL testified that although she would get a little "antsy" or "nervous," it had never caused her to think something happened that had not. She stated that she never had "super vivid nightmares," nor had she ever been unable to distinguish between a nightmare and something that actually happened. HL said that her anxiety had previously caused her to cry, and her mother testified that sometimes HL would express her anxiety by crying.

Teters moved to disclose HL's confidential therapy and mental hospital records, but the trial court denied the motion. The trial court conducted an in camera review of the records, ruling that they did not contain any "discoverable relevant evidence to support a violation of the privileges contained in the documents." Clerk's Papers (CP) at 189-90.

Teters presented considerable evidence of his PTSD. During her closing argument, the prosecutor suggested that Teters relied heavily on evidence of his PTSD and war service history to "distract" the jury from "the real issue": whether he touched HL. VRP (Vol. VII) at 905. Teters objected to this comment but was overruled.

The prosecutor also asked the jurors to ask themselves why HL would "make this up" and what she would have to gain from making it up. VRP (Vol. VII) at 892-94. The prosecutor also stated several times that HL had told the jury what had happened to her. She later stated that the victim was interviewed prior to trial by the defense attorney and that she came to court to testify, even though it was difficult for her. At one point, after discussing the elements of the charged crimes, the prosecutor stated that the State did not have to prove why Teters committed those crimes. Teters did not object to any of these statements or request any curative instructions, and the trial court later instructed the jury that attorneys' remarks are not evidence.

The jury could not reach a verdict on the second degree child rape charge, but found Teters guilty of attempted second degree child rape and second degree child molestation. At sentencing, the trial court imposed standard range sentences on both counts, including an indeterminate sentence.

The trial court also imposed several community custody conditions on Teters. These included conditions (1) prohibiting him from entering into or frequenting business establishments or locations that cater to minor children or locations where minors are known to congregate, without prior approval, (2) prohibiting him from consuming alcohol, (3) requiring that he submit to urine, breath, or other alcohol monitoring, (4) prohibiting him from possessing drug paraphernalia, and (5) prohibiting him from viewing or possessing sexually explicit material.

Teters appeals.

## ANALYSIS

### I. AMENDMENT OF INFORMATION DURING TRIAL

Teters argues that the trial court erred in allowing the State to amend the information after presenting the testimony of several witnesses, including the victim. The second amended information (1) added attempted second degree child rape as a stand-alone count in addition to the preexisting second degree child rape charge and (2) removed language showing second degree child molestation as an alternative to the second degree child rape charge, instead charging it as another stand-alone count.[4] We hold that the trial court did not err in accepting the second amended information.

### A.    Legal Principles and Standard of Review

A defendant must be informed of the charges against him and cannot be tried for uncharged offenses. *State v. Carr*, 97 Wn.2d 436, 439, 645 P.2d 1098 (1982). We review a trial court's decision to allow the State to amend the information for abuse of discretion. *State v. Haner*, 95 Wn.2d 858, 864, 631 P.2d 381 (1981).

---

[4] The original amended information contained one count of second degree child rape and, in the alternative, one count of second degree child molestation. The second amended information had three separate charges: (1) second degree child rape, (2) attempted second degree child rape, and (3) second degree child molestation.

CrR 2.1(d) allows for amendment of the information at any time before the verdict, as long as the amendment does not prejudice the "substantial rights of the defendant."[5] This rule "is intended to fulfill the state constitution's notice provision by allowing a defendant the opportunity to adequately defend him or herself." *State v. Hakimi*, 124 Wn. App. 15, 28, 98 P.3d 809 (2004). Prejudice can be demonstrated, for example, through a showing of unfair surprise or inability to prepare a defense. *State v. James*, 108 Wn.2d 483, 489, 739 P.2d 699 (1987). However, the possibility of a harsher penalty, standing alone, cannot constitute specific prejudice. *Id*. at 489-90. The defendant bears the burden of showing prejudice. *State v. Ziegler*, 138 Wn. App. 804, 809, 158 P.3d 647 (2007).

B.      Prejudice

Teters first argues that adding the attempted second degree child rape charge as a stand-alone offense was inherently prejudicial because it increased the charges against him mid-trial, after several witnesses had testified and had been cross-examined. The State counters that, even without the second amended information, the jury still could have considered attempted second degree child rape in addition to the second degree child rape count charged in the original amended information. The State reasons that the attempted second degree child rape charge could have gone to the jury regardless as a lesser included offense of second degree child rape

---

[5] *State v. Pelkey* limited the State's ability to amend the information after resting its case in chief, holding that the State can only amend after resting if it amends to a lesser degree of the same charge or to a lesser included offense. 109 Wn.2d 484, 745 P.2d 854 (1987). Our Supreme Court has declined to extend *Pelkey*'s per se rule to encompass amendments made during the State's presentation of its case in chief. *See State v. Schaffer*, 120 Wn.2d 616, 845 P.2d 281 (1993); *State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995). The test remains whether the defendant can show prejudice resulting from the amendment. *See State v. Hakimi*, 124 Wn. App. 15, 26-27, 98 P.3d 809 (2004).

under RCW 10.61.003, which provides that the jury may find the defendant guilty of an attempt to commit the offense charged.

Hence, Teters was always on notice that he could be convicted of attempted second degree child rape, despite only being charged originally with second degree child rape. *See Hakimi*, 124 Wn. App. at 28. As the State points out, Teters hardly would have been better off if the trial court had rejected the amendment and instead instructed on the lesser-included offense of attempted second degree rape pursuant to RCW 10.61.003. The outcome would have been the same either way: a conviction of attempted second degree child rape. Teters thus has not met his burden of demonstrating that the additional attempted second degree rape charge surprised him or affected his ability to prepare his defense. *James*, 108 Wn.2d at 489; *Ziegler*, 138 Wn. App. at 811.[6] Adding the charge of attempted second degree child rape during the prosecution's case in chief did not prejudice Teters.

Teters also contends that the amendment was improper because it removed the "in the alternative" language relating to the second degree child molestation count, thereby exposing him to additional criminal charges. Br. of Appellant at 24-25. In *State v. Aho*, the court held that there was no prejudice from a mid-trial amendment from child rape to child molestation. 89 Wn. App. 842, 849-50, 954 P.2d 911 (1998), *reversed on other grounds*, 137 Wn.2d 736 (1999). The

---

[6] Teters relies on *Ziegler* for the proposition that the addition of criminal charges after the victim has testified and been cross-examined is unmistakably prejudicial. But in *Ziegler* the additional charges were for two additional rape counts involving two additional victims, both of whom had already testified. 138 Wn. App. at 806-07. The court said nothing of "unmistakable prejudice," but rather vacated the additional rape convictions because those counts represented entirely new charges the defendant had to respond to that would have completely changed his trial strategy and plea negotiations had he known about them ahead of time. *Id.* at 811. Here, on the other hand, Teters' strategy in defending the rape charge likely would not have changed had the new attempted rape charge been added earlier, as it was a lesser included offense of the original rape charge.

*Aho* court reasoned that the critical difference between rape and molestation was whether penetration occurred, so the defendant's case was not affected by the amendment and additional discovery or continuance would not have impacted his rights. *Id.* at 849. The fact that in this case the second degree child molestation charge was included in addition to the second degree rape charge, rather than substituting for it, does not materially affect the analysis because additional discovery or continuance would not have affected Teters' rights. *See id.* Indeed, Teters could hardly have been unfairly surprised by the new count of second degree child molestation, because it was already included as an alternative to his second degree child rape charge in the original amended information. *See James*, 108 Wn.2d at 489-90.

Moreover, the fact that Teters did not request a continuance when the trial court allowed the State's amendment is evidence supporting that the amendment was not prejudicial. *See Ziegler*, 138 Wn. App. at 810.

For these reasons, we hold that Teters failed to meet his burden of demonstrating prejudice from either the addition of the attempted second degree child rape charge or the removal of the "in the alternative" language for the second degree child molestation charge.

## II. DOUBLE JEOPARDY

Teters argues that his convictions of second degree child molestation and attempted second degree child rape violated his right against double jeopardy. Br. of Appellant at 27. We agree.

A. Legal Principles and Standard of Review

The state and federal double jeopardy clauses protect against multiple punishments for the same offense, as well as against a subsequent prosecution for the same offense after acquittal or conviction. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). At

issue in any double jeopardy analysis of the first type is whether the legislature intended to impose multiple punishments for the same offense. *Id.* at 815. We review alleged violations of double jeopardy de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).

When legislative intent is not clear, the court applies the *Blockburger*[7] "same evidence" test. *State v. Freeman*, 153 Wn.2d 765, 776, 108 P.3d 753 (2005). *Blockburger* states that if the crimes, as charged and proved, are the same in law and in fact, they may not be punished separately absent clear legislative intent to the contrary. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In other words, "[i]f there is an element in each offense which is not included in the other, *and* proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses." *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983) (emphasis added).

Under this test, multiple convictions based on a single act violate double jeopardy if the evidence required to support a conviction for one offense is sufficient to support a conviction for the other. *Orange*, 152 Wn.2d at 816. "In other words, if the evidence to prove one crime would also completely prove a second crime, the two crimes are the same in law and fact." *State v. Walker*, 143 Wn. App. 880, 886, 181 P.3d 31 (2008). Washington courts have stated the test as having one prong for elements and one for proof: "We are to consider the elements of the crimes both as charged and as proved." *State v. Nysta*, 168 Wn. App. 30, 46-47, 275 P.3d 1162 (2012). Hence it is possible for two convictions to violate double jeopardy when they are the same "in fact" even if not the same "in law" in the abstract. *Id.* at 48 (summarizing the holding of

---

[7] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

*Orange*). "However, the mere fact that the same *conduct* is used to prove each crime is not dispositive." *Freeman*, 153 Wn.2d at 777.

B.      Same in Law and Fact

In applying the test in *Orange*, several courts have held that a single incident may support convictions for both child rape and child molestation without offending double jeopardy. *State v. Land*, 172 Wn. App. 593, 600, 295 P.3d 782 (2013); *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006); *State v. Wilkins*, 200 Wn. App. 794, 808, 403 P.3d 890 (2017), *review denied*, 190 Wn.2d 1004 (2018). *Wilkins* reasoned that the two crimes were not the same in law and fact because the molestation occurred when the defendant had sexual contact with the victim for sexual gratification, whereas the rape occurred when there was penetration. *Id.* Despite arising out of the same incident, they were two separate offenses requiring proof of a fact that the other did not. *Id.*

The State relies on *Wilkins* to argue that we should reach the same conclusion: the molestation occurred when Teters touched HL for sexual gratification, and the attempted rape occurred when he took a substantial step toward having sexual intercourse with her. But as Teters rightly points out, this double jeopardy claim involves child molestation and *attempted* rape, not completed rape. Attempted rape, unlike rape, does not require actual penetration, only a substantial step toward penetration with the intent to penetrate. *See* RCW 9A.28.020(1); RCW 9A.44.076; RCW 9A.44.010(1).

Here, the prosecution relied on the same act for both offenses for which Teters was convicted. The child molestation occurred when Teters touched HL on her vagina for the purpose of sexual gratification. The attempted rape occurred when Teters took a substantial step toward the commission of rape by touching HL on her vagina, "moving around" and "trying to

12

feel [her]" and "go inside." VRP (Vol. III) at 360-61. Unlike in *Wilkins*, here the two offenses occurred in the same moment with the same act: when Teters touched HL on her vagina, moving his finger around and trying to go inside her vagina. The evidence required to support a conviction of attempted second degree child rape was sufficient to support a conviction of second degree child molestation, so the two crimes as proved are the same in law and fact. *Orange*, 152 Wn.2d at 816, 820.

Under the specific facts of this case, Teters' attempted second degree child rape and second degree child molestation crimes as proved were the same in law and fact. We accordingly hold that receiving convictions for both crimes violated his constitutional protection against double jeopardy. We accordingly vacate the conviction for the crime that forms part of the proof of the other: in this case, Teters' conviction for second degree child molestation. *See Freeman*, 153 Wn.2d at 775.

## III. PROSECUTORIAL MISCONDUCT

Teters argues that several instances of prosecutorial misconduct require reversal and a remand for a new trial. We disagree.

A.      Legal Principles and Standard of Review

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's alleged misconduct was "'both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). "Prejudice is established only if there is a substantial likelihood the instances of misconduct affected the jury's verdict." *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995).

We view any allegedly improper comments in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). During closing argument, prosecutors have "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006)). In arguing the law, prosecutors are "confined to the law as set forth in the instructions of the court." *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972).

If the defendant objected to the alleged misconduct, we evaluate (1) whether the prosecutor's comments were improper and (2) whether a substantial likelihood exists that the improper statements affected the jury's verdict. *Magers*, 164 Wn.2d at 191. If the defendant did not object, the challenge to the alleged misconduct is waived unless the remark is "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant bears the burden of showing both prongs of prosecutorial misconduct. *Magers*, 164 Wn.2d at 191.

B.     Prosecutor's Statements not Improper and Prejudicial

Teters' first argument is that the prosecutor denigrated the defense by suggesting that Teters relied heavily on evidence of his PTSD and war service history to "distract" the jury from "the real issue," which is whether he touched HL. Br. of Appellant at 35-36. Teters' objections to this comment were overruled at trial.

Teters likens the prosecutor's comment to the statements held improper in *State v. Gonzales*, 111 Wn. App. 276, 45 P.3d 205 (2002) and *State v. Negrete*, 72 Wn. App. 62, 863 P.2d 137 (1993). In *Gonzales*, the prosecutor argued that he had a "very different job than the

defense attorney," because the defense attorney had an obligation to his client, whereas the prosecutor had an obligation "to see that justice is served." 111 Wn. App. at 283. In *Negrete*, the prosecutor told the jury that defense counsel was "being paid to twist the words of the witnesses" by the defendant. 72 Wn. App. at 66 (emphasis omitted).

Here, unlike in *Gonzales*, the prosecutor did not seek "'to draw the cloak of righteousness around [herself] in [her] personal status as government attorney and impugn[] the integrity of defense counsel.'" 111 Wn. App. at 283 (quoting *United States v. Frascone*, 747 F.2d 953, 957-58 (5th Cir. 1984)). She made no suggestions that she and defense counsel had different jobs or that she was more trustworthy by virtue of her position. Nor did she suggest that the defense counsel was untrustworthy because of his obligation to the defendant, as the prosecutor did in *Negrete*. 72 Wn. App. at 66. The prosecutor should not have suggested that defense counsel's motivation was to distract the jury as part of her argument. Nonetheless, the weight of her argument, including the remark about distracting, was that the defense was relying on evidence that was irrelevant to the merits of the case. We hold that this remark was proper.

Second, Teters argues that the prosecutor improperly suggested that the jury had to find the victim was lying in order to acquit. It is improper for a prosecutor to argue that the jury must find the victim is lying in order to acquit. *See State v. Casteneda-Perez*, 61 Wn. App. 354, 362-63, 810 P.2d 74 (1991). In closing, the prosecutor asked the jurors to ask themselves why HL would "make this up" and what she would have to gain from making it up. VRP (Vol. VII) at 892-94. We disagree with Teters that this amounts to telling the jury that it had to find HL was lying in order to acquit. It is not misconduct for a prosecutor to urge the jury to consider the evidence and motives of the parties in determining the victim's credibility. We hold this comment was proper.

Third, Teters contends that the prosecutor misstated the law in arguing that the State did not have to prove why he committed the crime. A prosecutor commits misconduct by misstating the standard upon which the jury could find guilt. *State v. Allen*, 182 Wn.2d 364, 373-74, 341 P.3d 268 (2015), *aff'd*, 431 P.3d 117 (2018). Teters reasons that because child molestation requires proof of intent of sexual gratification, and attempted rape requires proof of intent to commit rape, the State misstated the law by saying it did not have to prove why he committed the crimes. We assume without deciding that this statement was improper. Because Teters did not object at trial, he must show that this statement was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. He has not done so. The trial court's instructions on the elements of the crimes were sufficient to neutralize any potential prejudice. We accordingly hold that Teters has waived his challenge to any alleged misconduct.

Fourth, Teters argues the prosecutor improperly commented on his rights to counsel and to trial when she stated that HL had to tell her defense attorney, the jury, and everyone else in the courtroom what had happened. Teters claims this statement effectively drew a negative inference from Teters exercising his constitutional rights to counsel and to trial. These remarks, however, were a legitimate manner of supporting the victim's credibility. We hold that the prosecutor's comment was proper.

Finally, Teters argues that the prosecutor improperly vouched for and bolstered HL by conveying a personal opinion as to HL's veracity. The prosecutor stated several times that HL had told the jury what had happened to her, which Teters contends amounted to giving the jury her own personal opinion that what HL said happened was indeed the truth. Teters did not object to any of those statements.

16

A prosecutor commits misconduct by giving an improper personal opinion when "it is clear and unmistakable" that she is not arguing an inference from the evidence, but expressing a personal opinion. *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983); *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). A prosecutor has wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). We examine "the entire argument," rather than just "highlighted snippets" taken out of context. *State v. Jackson*, 150 Wn. App. 877, 884, 209 P.3d 553 (2009). In *Jackson*, the court concluded that the prosecutor's statement that a police officer's testimony was "accurate and true" did not amount to vouching for the officer's credibility, but rather in the context of his entire argument simply argued that the evidence "could support the jury's conclusion that the officers were credible." *Id.* at 884-85.

Here, the prosecutor did not say that she believed HL or offer a personal opinion as to her credibility. *See State v. Sargent*, 40 Wn. App. 340, 343-44, 698 P.2d 598 (1985) (concluding that the prosecutor's statement, "I don't believe Jerry Lee Brown," was improper). Rather, the prosecutor argued that HL had testified as to what happened to her and drew reasonable inferences about what that meant for the credibility of witnesses and the persuasiveness of the State's evidence. Teters fails to show that it was "clear and unmistakable" that the prosecutor was expressing a personal opinion. *Brett*, 126 Wn.2d at 175. The prosecutor's comments were not improper.

IV. DISCOVERY OF HL'S THERAPY RECORDS

Teters argues that his rights to present a defense and to confront the witnesses against him were violated when the trial court did not order the disclosure of the victim's therapy and

mental hospital records after the court conducted an in camera review of those records. Teters asks us to conduct an independent review of those records to determine whether the trial court acted properly. The State also welcomes us to conduct this review.

A.      Legal Principles and Standard of Review

Although Teters bases his challenge on constitutional rights to present a defense and to confront witnesses, our Supreme Court has stated that traditional due process analysis is a more appropriate framework for discovery issues. *State v. Knutson*, 121 Wn.2d 766, 771-72, 854 P.2d 617 (1993). Due process affords a defendant the right to access evidence in the possession of the court that is "'both favorable to the accused and material to guilt or punishment.'" *Id.* at 772 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987)). This rule of disclosure applies equally to substantive evidence and to impeachment evidence. *Id.*

Evidence is material if there is a reasonable probability that it would change the outcome of the proceeding. *Id.* at 772-73. A "'reasonable probability'" is "'a probability sufficient to undermine confidence in the outcome.'" *Id.* at 773 (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 887, 828 P.2d 1086 (1992)). This requires "more than a 'mere *possibility*' that evidence '*might* have affected the outcome of the trial.'" *Knutson*, 121 Wn.2d at 773 (quoting *State v. Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407 (1986)).

Where the prosecution attempts to prevent defense access to privileged or confidential files, the defendant may request that the trial court conduct an in camera review of the documents. *See* CrR 4.7(h)(6); *State v. Mines*, 35 Wn. App. 932, 938-39, 671 P.2d 273 (1983). "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant" of "relevant material and information." CrR 4.7(e)(1). A defendant must make a particularized showing that the records

are likely to contain evidence material to the defense. *State v. Kalakosky*, 121 Wn.2d 525, 550, 852 P.2d 1064 (1993) (addressing Victims of Sexual Assault Act, chapter 70.125 RCW).

"There is no right to discover evidence that is privileged." *Mines*, 35 Wn. App. at 939. Defense counsel has a duty to ferret out all relevant evidence, "but may not perform this duty by breaching the physician-patient privilege."[8] *Id.* Communications from a patient to a physician are privileged if necessary to obtain professional advice or treatment, and "[t]he fact that the statements were necessary to receive treatment may be inferred from the circumstances without formal proof." *State v. Gibson*, 3 Wn. App. 596, 598, 476 P.2d 727 (1970). Hospital records are also privileged if they contain information supplied by the patient. *Randa v. Bear*, 50 Wn.2d 415, 421, 312 P.2d 640 (1957).

The scope of discovery of privileged records is within the discretion of the trial court, subject to review only for manifest abuse of discretion. *Gregory*, 158 Wn.2d at 791.

B.        No Abuse of Discretion

The trial court conducted an in camera review of HL's therapy and mental hospitalization records, and held that they contained "no discoverable relevant evidence to support a violation of the privileges contained in the documents." CP at 189-90. Although the scope of discovery is within the trial court's discretion, we do not "act as a rubber stamp for the trial court's in camera hearing process." *State v. Wolken*, 103 Wn.2d 823, 829, 700 P.2d 319 (1985). We have conducted a review of the records reviewed in camera by the trial court. In so doing we recognize the importance impeachment evidence can have in a sexual assault case. *See Knutson*, 121 Wn.2d at 775.

---

[8] The physician-patient privilege is codified in former RCW 5.60.060(4) (2012). Although this is a civil statute, it has been held to apply to criminal cases by virtue of RCW 10.58.010. *State v. Gibson*, 3 Wn. App. 596, 598, 476 P.2d 727 (1970).

Our review of the records revealed no evidence raising a reasonable probability that their admission would have changed the outcome of the trial. *Knutson*, 121 Wn.2d at 772-73. Hence, the records do not contain evidence material to Teters' guilt or punishment, and his due process rights were not violated by their exclusion. *See id.* at 772. We accordingly hold that the trial court did not abuse its discretion in declining to disclose the sealed records.

## V. CONDITIONS OF COMMUNITY CUSTODY

Teters argues that the trial court improperly imposed four conditions of community custody. Specifically, he argues the court erred in prohibiting him from entering business establishments or locations that cater to minor children or from frequenting locations where minors are known to congregate (condition 3), requiring that he submit to urine, breath, or other alcohol monitoring (condition 6), prohibiting him from possessing drug paraphernalia (condition 7), and prohibiting him from viewing or possessing sexually explicit material (condition 11). The State argues that condition 3 should be upheld, but agrees that conditions 6, 7, and 11 should be stricken. The State also takes the position that condition 5, prohibiting Teters from consuming alcohol, should be stricken.

A.    Legal Principles and Standard of Review

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a sentencing court may not impose conditions of sentence unless they are authorized by statute. *See State v. Zimmer*, 146 Wn. App. 405, 412-13, 190 P.3d 121 (2008). A person convicted of attempted second degree child rape shall be sentenced to community custody under the supervision of the Department of Corrections for any time he is released from total confinement before expiration of the maximum sentence. RCW 9.94A.507(5). A trial court may impose crime-related prohibitions, affirmative conditions, and statutorily authorized infringements of some

20

constitutional rights as part of an offender's probation. Former RCW 9.94A.505(9) (2012); former RCW 9.94A.703(3)(f) (2009); *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). A condition is only "crime-related" if it is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(10) (2012). While there need not be proof of a causal link, there must be sufficient evidence of a factual relationship between the crime and the condition. *See State v. Parramore*, 53 Wn. App. 527, 531, 768 P.2d 530 (1989).

An unauthorized condition of community custody is considered void and in excess of the court's authority. *State v. Hale*, 94 Wn. App. 46, 53, 971 P.2d 88 (1999). An illegal or erroneous condition of a sentence may be raised for the first time on appeal. *Bahl*, 164 Wn.2d at 744-45. As the imposition of crime-related prohibitions is "necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010).

Limitations on fundamental rights during community custody are constitutional if they are crime-related and "reasonably necessary to accomplish the essential needs of the state and the public order." *State v. Riles*, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782 (2010). Courts have recognized prevention of harm to children as a compelling state interest justifying limitation of one's rights. *State v. Letourneau*, 100 Wn. App. 424, 439, 997 P.2d 436 (2000). For a person under community custody, this can include limitations on his rights to movement or freedom of association. *In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 517, 45 P.3d 1103 (2002). But when a condition affects materials or actions protected by the First Amendment, a stricter standard of definiteness

is required. *Bahl*, 164 Wn.2d at 753. Finally, a community custody condition is unconstitutionally vague if it fails to (1) provide ordinary people fair warning of the proscribed conduct and (2) have standards that are definite enough to "'protect against arbitrary enforcement.'" *Id.* at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

B.      Community Custody

Teters argues that because the crime did not occur in a business establishment or place that caters to minor children, condition 3 is not crime-related. He further argues that this condition is constitutionally vague because it contains a list of examples that is not exhaustive and covers "any areas routinely used by minors as areas of play/recreation." CP at 391. The full condition imposed by the trial court states:

> You shall not enter into or frequent business establishments or locations that cater to minor children or locations where minors are known to congregate without prior approval of DOC. Such establishments may include but are not limited to video game parlors, parks, pools, skating rinks, school grounds, malls or any areas routinely used by minors as areas of play/recreation.

CP at 391.

Because Teters was convicted of committing sex crimes against a child, protecting other children from him is a compelling state interest. *Letourneau*, 100 Wn. App. at 439. There is sufficient evidence of a factual relationship between Teters' crimes and this condition; he was convicted of sex crimes against a child, and this condition aims to limit his future contact with children. *Parramore*, 53 Wn. App. at 531. Thus, condition 3 is crime-related.

As to Teters' argument that this condition is unconstitutionally vague for failing to provide him sufficient notice of what was prohibited, we agree with Teters. In *State v. Irwin*, Division One of our court struck down a community custody condition that stated simply: "Do

22

not frequent areas where minor children are known to congregate, as defined by the supervising [community corrections officer]." 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The court reasoned that "[w]ithout some clarifying language or an illustrative list of prohibited locations (as suggested by trial counsel), the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" *Id.* at 655 (quoting *Bahl*, 164 Wn.2d at 753). Furthermore, allowing the community corrections officer to set such locations at a later date left the condition vulnerable to arbitrary enforcement. *Irwin*, 191 Wn. App. at 655.

We recently held in *State v. Wallmuller* that the phrase "places where children congregate" in a condition of community custody was unconstitutionally vague. 4 Wn. App. 2d 698, 703-04, 423 P.3d 282 (2018), *review granted*, ___ P.3d ___ (Wash. 2019). The fact that the condition also contained an illustrative list did not cure the phrase's vagueness, because the inclusion of the words "such as" before that list indicated that frequenting more places than just those listed would violate the condition. *Id.*

In this case, the condition includes an illustrative list of prohibited locations, and so provided Teters with more sufficient notice of the proscribed conduct than did the condition in *Irwin*. 191 Wn. App. at 655. However, like the list in *Wallmuller*, this condition uses the vague phrase "where children congregate" and includes a nonexhaustive list that leaves unanswered questions about what other locations might be prohibited.[9] For example, if parks are off limits, what about a professional baseball stadium; if pools are prohibited, what about beaches? As in *Wallmuller*, this condition "invites a completely subjective standard" for interpreting which

---

[9] We note that several unpublished opinions in all three divisions of the Court of Appeals have addressed similar community custody conditions in recent years, and we recognize that some of these opinions reach different conclusions regarding the vagueness of such conditions. However, as a published opinion, *Wallmuller* is authoritative and controlling here.

locations are off limits to Teters. *Wallmuller*, 4 Wn. App. 2d at 703. Moreover, the fact that

Teters must obtain approval from DOC to visit one of these locations "virtually acknowledges

that on its face [the condition] does not provide ascertainable standards for enforcement." *Bahl*,

164 Wn.2d at 758. For these reasons, we hold that condition 3 is unconstitutionally vague.

Teters also challenges condition 3's prohibition on visiting "locations that cater to minor

children" as vague. Br. of Appellant at 49. Like the "known to congregate" clause, this

prohibition is similarly vulnerable to differing subjective interpretations because it is not clear

that an ordinary person would know which other places would be included. For example,

McDonald's clearly caters to children because it has a clown mascot and its locations typically

have a play area for children. Does a department store or supermarket also "cater to minor

children" if it contains a small play area where parents can leave their children while they shop?

Does a nice sit-down restaurant "cater to minor children" if it has a children's menu? The "cater

to minor children" clause "invites a completely subjective standard" for interpreting which

locations are off limits to Teters. *Wallmuller*, 4 Wn. App. 2d at 703. Accordingly, we hold it is

unconstitutionally vague.

Teters next argues that because the incident did not involve controlled substances, and the

trial court was unconvinced alcohol played a significant role, conditions 6 and 7 (requiring

Teters to submit to breath and urine monitoring and prohibiting him from possessing drug

paraphernalia) are not crime-related and must be struck down. A condition regarding drug

paraphernalia is not "crime-related" when the State presents "no evidence or argument that drug

use, or possession of drug paraphernalia, bore any relation to [the] offense. *Land*, 172 Wn. App.

at 605. "'[P]ersons may be punished for their crimes and they may be prohibited from doing

things which are directly related to their crimes, but they may not be coerced into doing things

which are believed will rehabilitate them.'" *State v. Riley*, 121 Wn.2d 22, 36-37, 846 P.2d 1365 (1993) (quoting D. BOERNER, *Sentencing in Washington*, § 4.5, at 4-7 (1985)).

The State agrees with Teters, noting also that condition 5 (prohibiting Teters from consuming alcohol) should also be struck down because it contradicted the trial court's statement at sentencing that conditions related to alcohol would not be included in the community custody conditions. The State contends that conditions 5, 6, and 7 were mistakenly included in the written judgment and sentence and should be stricken. There was no evidence that drugs or alcohol played any role in the crimes; indeed the trial court explicitly determined at sentencing that alcohol did not play a significant role and should not be included in the custody conditions. We agree that conditions 5, 6, and 7 are not crime-related.

Teters and the State also agree that condition 11, prohibiting Teters from using sexually explicit materials, is not crime-related and must be stricken. We disagree.

Although there is no evidence that Teters' crimes directly relate to use or possession of sexually explicit materials, our Supreme Court has recently explained that "the State need not establish that access to 'sexually explicit materials' *directly caused* the crime of conviction," but rather that it was "reasonably related" to the crime. *State v. Nguyen*, 191 Wn.2d. 671, 685, 425 P.3d 847 (2018). That court concluded that it was "both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Id.* at 686. Hence, we hold that condition 11 is reasonably related to Teters' crimes of conviction.

## VI. Ineffective Assistance of Counsel

Teters argues that he received ineffective assistance of counsel because his attorney failed to properly argue (1) against the State's motion to amend the information and (2) that Teters was subjected to double jeopardy. We disagree.

A.      Legal Principles and Standard of Review

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right of a criminal defendant to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). Ineffective assistance of counsel is a mixed question of law and fact and is reviewed de novo. *State. v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). However, in evaluating ineffectiveness claims, we must be highly deferential to counsel's decisions. *State v. Michael*, 160 Wn. App. 522, 526, 247 P.3d 842 (2011).

Washington follows the *Strickland* test: the defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. 466 U.S. at 687; *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001) (stating Washington had adopted the *Strickland* test).

Deficient performance requires errors so serious that counsel was not functioning as the "counsel" as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. A trial counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant bears the burden of establishing deficient performance. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A defendant can

rebut this presumption by demonstrating that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). That said, the "relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

To show prejudice, the defendant must show that counsel's errors were "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. In other words, within a reasonable probability, "but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 694).

B.      No Deficient Performance

In this case, Teters argues his counsel was deficient because he did not make a detailed argument to the court on the relevant law governing the amended information and only filed a pro forma motion objecting to it. We disagree.

Teters' attorney objected to the second amended information, thereby preserving the issue for appeal. In addition, he continued discussing the matter with the trial judge to ensure that the existence of three separate charges would not expose his client to three separate convictions or an increased sentence. Teters has failed to meet his burden to show his attorney's objection to the second amended information was deficient.

Teters also argues his trial counsel was deficient for failing to argue the issue of double jeopardy when objecting to the amendment. His attorney expressed concerns that the amended information was exposing his client to multiple convictions and a harsher sentence, ultimately

agreeing with the trial court that those issues would be resolved at sentencing and that Teters could not actually be convicted of all three crimes. Hence, there was little for defense counsel to accomplish by preemptively litigating the double jeopardy issue. Teters has not shown his attorney's handling of the double jeopardy issue was deficient.

We hold that Teters has not demonstrated that his counsel's performance was deficient.

## VII. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Teters argues in his SAG that the trial court erred in its evidentiary rulings and reiterates his appellate counsel's arguments with respect to prosecutorial misconduct and the amended information. Each of these arguments fails.

### A. Evidentiary Rulings

Admission of evidence is within the trial court's sound discretion, which we will not disturb on review absent a showing of abuse of discretion. *State v. Stubsjoen*, 48 Wn. App. 139, 147, 738 P. 2d 306 (1987). The appellant bears the burden of proving abuse of discretion. *State v. Hentz*, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), *reversed on other grounds*, 99 Wn.2d 538 (1983). Erroneous admission of evidence is not grounds for reversal "unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).

Teters first argues that the trial court improperly sustained an objection to his question of Kashiwabara that had already been asked and answered. It was within the trial court's discretion to sustain this objection under ER 402.

Teters also argues he was unfairly prejudiced when the photographs of him in police custody were used at trial. Referring to booking photographs may raise a prejudicial inference of criminal propensity. *State v. Sanford*, 128 Wn. App. 280, 286, 115 P.3d 368 (2005). Even

28

assuming the trial court abused its discretion in admitting the photograph, Teters has not made a sufficient showing that "within reasonable probabilities, the outcome of the trial would have been materially affected" had the trial court excluded the booking photograph. *Tharp*, 96 Wn.2d at 599.

He contends that the photographs depict him "in a prejudiced tone" because they showed him "in police custody, [his] hands bagged, at 2:00 [a.m.] in the morning after a panic attack." SAG at 6. While such a photograph might paint a defendant in a negative light, it does not follow that the photographs' exclusion would have materially affected the outcome of Teters' trial. *See Tharp*, 96 Wn.2d at 599. There is no indication that these routine booking photographs, taken during Teters' arrest for the crimes at issue in this case, constituted such an unfairly negative portrayal of Teters that they swayed the opinions of the jurors. We accordingly hold that Teters has not shown prejudice.

## B.      Prosecutorial Misconduct and Amended Information

Teters reiterates his appellate counsel's arguments that the prosecutor engaged in misconduct through the statement relating to his PTSD and by misstating the law. Teters also reiterates his counsel's arguments on the amended information. These issues are addressed above.

## CONCLUSION

We affirm Teters' conviction of attempted second degree child rape. We reverse Teters' conviction of second degree child molestation. We remand for the trial court to vacate Teters' conviction of second degree child molestation, to resentence Teters on his conviction of attempted second degree child rape, to strike conditions 5, 6, and 7 from Teters' conditions of

community custody, and to modify condition 3 consistently with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

Maxa, C.J.

Lee, J. (concur in part and dissent in part) – I concur with the majority's opinion in all respects except for the majority's holding that the community custody condition prohibiting Teters from frequenting places that cater to minor children or locations where minors are known to congregate is unconstitutionally vague. For the same reasons articulated in my dissent in *State v. Wallmuller*, 4 Wn. App. 2d 698, 423 P.3d 282 (2018), *review granted*, ___ P.3d ___ (Wash. 2019), I respectfully disagree with the majority and would hold that the condition was not unconstitutionally vague.



Lee, J.