FILED
MARCH 17, 2020
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36436-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE MARIO LOPEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jose Lopez appeals his convictions for first degree

child molestation, second degree child molestation, and third degree child rape. He

argues the trial court committed reversible error by permitting the State's expert witness

to testify why sexual abuse victims sometimes delay reporting abuse. In his statement of

additional grounds for review (SAG), he argues the trial court denied him due process and

he was denied effective assistance of counsel. We disagree with his arguments and

affirm.

FACTS

Jose Lopez and his family moved next door to A.L. and her family when A.L. was

six years old. Lopez lived with his wife, his daughter and her husband, and his

granddaughter, Josie.  Josie and A.L. became close friends.  A.L. frequently went to Lopez's house and sometimes spent the night there.  A.L. would usually sleep in a bedroom in the back of the house or on a pullout bed in the living room.  A.L. and Josie would accompany Lopez to the store, and Lopez would buy them candy and ice cream. Lopez also bought A.L. gifts, such as rings and necklaces.

In 2014, when A.L. was around 12 years old, Lopez divorced his wife and moved into an upstairs apartment in A.L.'s home.  A.L. often spent weekend nights in the upstairs apartment with Lopez.

Not long after Lopez moved in, A.L. told her mother that Lopez had sex with her, and she feared she was pregnant.  A.L. then confided this to a friend.  The friend told her mother and eventually Child Protective Services and the police became involved.

The State charged Lopez with one count of child molestation in the first degree, one count of child molestation in the second degree, and one count of rape of a child in the third degree.  The State alleged various enhancements on each of the three charges.

Before trial, Lopez filed a motion to terminate his first counsel's representation because of a breakdown in communication.  The State objected, arguing that the case had already been substantially delayed and counsel had already interviewed A.L.  The trial

2

court granted the motion, but warned Lopez that his replacement counsel might not be granted an opportunity to reinterview A.L.

Later, Lopez's replacement counsel made a motion to interview A.L. Counsel argued a second interview was necessary because there was no recording or transcript produced from the first interview. He admitted he spoke with Lopez's original counsel and investigator, and he reviewed their interview notes. He nevertheless believed his duty to effectively represent Lopez required him to separately interview A.L. The trial court denied Lopez's motion.

At trial, the State called A.L. to testify. A.L. testified her relationship changed with Lopez when she was 9 or 10 years old. Around that time, Lopez pulled up A.L.'s shirt, kissed and touched her breasts, and kissed her ear. This continued most weekends that A.L. stayed at Lopez's home. At 12 years of age, the touching progressed to Lopez putting his hands down A.L.'s pants and touching her vagina.

It was at this point when Lopez divorced his wife and moved into the upstairs apartment of A.L.'s family. A.L. testified she was happy when Lopez moved in because she looked up to him like a grandfather.

She testified about the weekend nights she spent in Lopez's apartment. Lopez had a big television and cable channels—amenities that A.L. did not have. Each weekend,

Lopez continued to put his hands down her pants and insert a finger into her vagina. If A.L. spent all three weekend nights there, Lopez would digitally penetrate her about one or two out of the three weekend nights.

One evening, after A.L. turned 14, A.L. was sleeping upstairs in Lopez's apartment when Lopez pulled her pants down, pulled his own pants down, and put his penis into her vagina. It lasted about 10 minutes. A.L. testified that this occurred at least four separate times. On one occasion, Lopez attempted to put his penis in A.L.'s mouth. Between the third and the fourth time, A.L. asked Lopez to stop.

Before A.L. told her mother, she confronted Lopez. Lopez attempted to persuade A.L. to tell her mother a lie. Lopez told A.L., "'My life is in your hands.'" Report of Proceedings (RP) at 97.

A.L. testified she did not know the touching was wrong at first because nobody told her. Once the sex started, A.L. did not want to tell her dad because she thought her dad would be mad at her. She also worried something bad would happen to Lopez.

The State then called Jessica Johnson to testify. Ms. Johnson is the executive director of SAGE (Safety, Advocacy, Growth, and Empowerment), a local domestic violence, sexual assault, and crime victims' assistance center. The State had previously

4

notified Lopez that Ms. Johnson would testify about child grooming. Lopez objected to Ms. Johnson's testimony. The trial court excused the jury and heard arguments.

Lopez argued that expert testimony of child grooming was not necessary and, in at least one appellate case, had caused reversible error. Lopez argued that jurors might place too much weight on expert testimony, and might improperly find a defendant guilty simply because the defendant had fostered a close relationship with the alleged victim.

The State clarified that Ms. Johnson would testify about child grooming, delayed reporting, and emotional trauma. The State explained it needed the jury to understand A.L.'s odd closeness to Lopez and why A.L. delayed so long to report Lopez's conduct. Lopez responded that he had not explicitly raised the issue of A.L.'s credibility and delayed reporting, and the testimony should not be permitted in the State's case-in-chief.

The trial court partially agreed with Lopez and ruled Ms. Johnson could not testify about child grooming. The court then determined that delayed reporting was a potential argument that Lopez would make to undermine A.L.'s credibility. When asked by the court, Lopez admitted, "I might argue that, in my closing argument, yes." RP at 194. The court ruled that Ms. Johnson could testify about delayed reporting.

Ms. Johnson then testified that delayed reporting is the process where victims do not report what happened to them right away. Victims could wait as long as years before

telling someone. It occurs for various reasons: shame, fear, nobody will believe them, or not knowing the actions were wrong. Children can be more apt to delay reporting.

Lopez took the stand and denied the allegations. He testified that he contracted Legionnaires' disease in October 2015. Lopez testified that the disease has prohibited him from functioning sexually.

To support his testimony, Lopez called his primary care physician, Dr. Bethany Lynn. She testified that the effects of one of Lopez's surgeries due to his Legionnaires' disease could cause erectile dysfunction.

During closing arguments, both sides argued extensively about A.L.'s credibility. The State argued there were several reasons why A.L. would not want to report Lopez's conduct, so that her reporting of it added credibility. The State also emphasized the number of factors present that lined up with Ms. Johnson's testimony about delayed reporting. The State described A.L. as "a perfect example" of why sexual assault victims did not want to come forward. RP at 417.

The jury returned guilty verdicts on all three counts. The trial court convicted Lopez and sentenced him. Lopez timely appealed to this court.

No. 36436-4-III
*State v. Lopez*


ANALYSIS

Lopez contends the trial court erred under ER 702 and ER 403 when it admitted Ms. Johnson's expert testimony.

We review a trial court's decision to admit expert testimony for an abuse of discretion. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Similarly, we review a trial court's decision on relevance and prejudicial effect under ER 403 for an abuse of discretion. *State v. Barry*, 184 Wn. App. 790, 801-02, 339 P.3d 200 (2014). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

*ER 702*

Expert testimony is admissible if "'(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact.'" *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 168-69, 288 P.3d 1140 (2012) (quoting *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984)). Lopez contests only the third element—that Ms. Johnson's testimony was not helpful to the trier of fact.

7

We find the trial court did not abuse its discretion under ER 702 by allowing Ms.

Johnson to testify regarding delayed reporting.  This case dealt with an alleged pattern of

abuse that occurred over a span of years and a significant amount of time passed between

A.L.'s report and the last alleged sexual incident.  Ms. Johnson's testimony dealt with

circumstances under which a child, or other victim, might delay reporting.  That type of

information directly applied to this case.  Moreover, Lopez did not foreclose the

possibility of arguing a defense theory that A.L. lied about the allegations because of her

delayed reporting.  We conclude the expert testimony was helpful to the trier of fact and

appropriate expert testimony under ER 702.

### *ER 403*

Under ER 403, the court can exclude relevant evidence "if its probative value is

substantially outweighed by the danger of unfair prejudice."  "A danger of unfair

prejudice exists '[w]hen evidence is likely to stimulate an emotional response rather than

a rational decision.'"  *Barry*, 184 Wn. App. at 801 (internal quotation marks omitted)

(quoting *State v. Beadle*, 173 Wn.2d 97, 120, 265 P.3d 863 (2011)).

Lopez argues the relevance of delayed reporting was minimal, but it allowed the

jury to improperly conclude he raped A.L. because she matched the profile of a rape

victim.  We disagree the testimony allowed such an argument or such an argument was

made.

Here, Ms. Johnson offered no opinion whether A.L. was a rape victim. She testified in generalities why victims, especially children, often delay reporting sexual abuse. She did not testify that persons who delay reporting sexual abuse were raped. The State did not argue that A.L. was raped because she delayed reporting sexual abuse. Instead, the State utilized Ms. Johnson's testimony to explain A.L.'s odd behavior of maintaining an emotionally and physically close relationship with Lopez for years and her substantial delay in reporting sexual abuse. In essence, the testimony rehabilitated A.L.'s credibility.

Lopez also argues that profile evidence was inadmissible in the State's "case in chief to prove that abuse did in fact occur." Appellant's Br. at 12. As explained above, we disagree that the State used Ms. Johnson's testimony as profile evidence, i.e., A.L. fit the profile of a sexual abuse victim.

Lopez implies that the delayed reporting evidence was not admissible until he challenged the victim's credibility. We have two responses.

First, before Ms. Johnson testified, Lopez told the trial court he might argue in closing that A.L. should not be believed because of delayed reporting. The State could not call Ms. Johnson to testify about delayed reporting *after* Lopez's closing argument.

9

For this reason, it made sense for the State to call Ms. Johnson in its case-in-chief.

Second, Lopez placed A.L.'s credibility at issue before the trial even began. In

*State v. Petrich*,[1] our high court wrote the following about children, delayed reporting,

and character evidence:

> [Petrich] also correctly assumes that corroborating testimony to
> rehabilitate a witness is not admissible unless the witness's credibility has
> been attacked by the opposing party. An attack on credibility is not found
> merely by evaluating cross examination tactics; several factors taken in
> conjunction may show a challenge to credibility. In particular cases, the
> credibility of a witness many be an inevitable, central issue. Cases
> involving crimes against children generally put in issue the credibility of the
> complaining witness, especially if defendant denies the acts charged and the
> child asserts their commission. An attack on the credibility of these
> witnesses, however slight, may justify corroborating evidence.

(Citations omitted.)

In conjunction with replacement counsel's pretrial request to interview A.L., he

advised the court: "It does not appear there is corroborating physical evidence in this case

in reference to the alleged allegations of Rape. As a result, the credibility of A.L. will be

the central issue at trial." Clerk's Papers at 19. This statement, together with the *Petrich*

court's comments, suggest that A.L.'s credibility was at issue before the trial even began.

---

[1] 101 Wn.2d 566, 574-75, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

The trial court did not err by allowing Ms. Johnson to testify in the State's case-in-chief about delayed reporting.

SAG—INEFFECTIVE ASSISTANCE OF COUNSEL—DUE PROCESS

Lopez contends the trial court violated his right to due process and he received ineffective assistance of counsel when the trial court denied replacement counsel's motion to reinterview the victim. We disagree.

*Due Process*

Our Supreme Court has recognized that the United States Supreme Court's traditional due process analysis provides the most suitable framework for analyzing discovery issues. *State v. Knutson*, 121 Wn.2d 766, 771, 854 P.2d 617 (1993). The due process clause affords criminal defendants a right of access to evidence that is favorable and material. *Id.* at 772.

Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (internal quotation marks omitted) (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 887, 828 P.2d 1086 (1992)). "A 'reasonable probability' has been defined as 'a probability sufficient to undermine confidence in the outcome.'" *Id.* at 773 (quoting

11

*Rice*, 118 Wn.2d at 887). It must be more than a *possibility* that the evidence *might have* affected the outcome. *Id.*

Here, Lopez sought to reinterview A.L. with replacement counsel to observe A.L.'s demeanor so as to effectively defend Lopez and because the first interview was not recorded or transcribed. Counsel admitted he was able to talk with Lopez's first counsel and a private investigator to obtain notes from the first interview. Lopez speculated, but failed to convince the trial court, how a second interview would have uncovered favorable evidence. Even after trial, he cannot point to any favorable evidence that would have been uncovered in a second interview. Our confidence in the outcome of Lopez's trial is not undermined.

*Effective Assistance of Counsel*

To protect a defendant's right to counsel, a defendant has the right to receive effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An allegation of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *Id.* at 698. To determine whether counsel provided effective assistance, we apply a two-pronged test: (1) whether counsel's performance was deficient, and (2) whether that deficient performance prejudiced the defendant to an extent that changed the result of the trial. *Id.* at 687.

12

No. 36436-4-III
*State v. Lopez*

We dismiss Lopez's claim of ineffective assistance of counsel on the first prong. Replacement counsel requested a second interview with A.L. Lopez complains that the trial court did not grant the motion. But this does not explain how his counsel performed deficiently.

We deny both claims made by Lopez in his SAG. The trial court did not violate his due process right to evidence because Lopez could not point to any specific evidence discoverable in a second interview that would have been favorable and material to his case. Moreover, he received effective assistance of counsel because his counsel attempted to obtain a second interview with the victim, but the trial court denied the motion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Korsmo, J._
Korsmo, J.

_Fearing, J._
Fearing, J.

13